(November 5, 1913.)

CURTIS J. MILLER, Respondent, v. DEL RIO MINING & MILLING CO., LTD., a Corporation, BANK OF NEZ PERCE and T. M. MOCKLER, Respondents, and B. J. McRAE and J. A. SCHULTZ, Appellants.

[136 Pac. 448.]

PROMISSORY NOTE—PAYABLE ON DEMAND — LIABILITY OF INDORSER— CONSIDERATION — FINDINGS OF FACT—INSUFFICIENCY OF EVIDENCE TO SUPPORT—PAYMENT OF NOTE—REISSUANCE.

1. *Held*, under the facts of this case that the promissory note for $812 was not given at the request of the defendants McRae and Schultz and one Mockler and was not given for their benefit or their accommodation.

2. Where a promissory note is paid by one of the indorsers and thereupon delivered to the person paying the same, and treated by the bank as canceled and paid, the indorser who pays such note is not authorized to reissue the same without the consent of the other parties thereto.

3. *Held*, under the facts of this case that T. W. Smith, the person to whom said note was reissued, took the same without recourse on the indorsers of said note.

4. When a promissory note is payable on demand under the provisions of sec. 3528, Rev. Codes, it becomes due and is payable within a reasonable time after its execution.

5. The plaintiff having purchased said promissory note on May 4, 1911, nearly four years after the same was executed, it being payable on demand, he took it subject to all defenses which the original maker of the note would have.

6. The Bank of Nez Perce owned said note. Schultz was an indorser thereon and paid it. There was no contract for the sale

of said note between the bank and Schultz, the transaction being simply a payment of the note.

7. The payment of the note is the discharge of the debt; the purchase of the note is a contract of purchase and sale.

APPEAL from the District Court of the Second Judicial District for Idaho County. Hon. Edgar C. Steele, Judge.

Action to recover on promissory notes and foreclosure of mortgage. Personal judgment rendered against the appellants. *Reversed.*

F. E. Fogg, for Appellants.

To enlarge the liability of an indorser from that implied by law from the position of his signature on a note to that of cosurety would require an express contract. (Sec. 3474, subd. 6, Rev. Codes; *Chapman v. Pendleton,* 26 R. I. 573, 59 Atl. 928.)

This court would be unwarranted in finding that any time in excess of the year after its issue provided by our former statute, which established the usage of this state and former territory for over a quarter of a century, was a reasonable time. (*Meritt v. Jackson,* 181 Mass. 69, 62 N. E. 987.)

An analysis of American cases will show that practically none of the older cases hold that a delay of one year without extraordinary circumstances to excuse was reasonable. (*Keyes v. Fenstermaker,* 24 Cal. 329; *Sice v. Cunningham,* 1 Cow. 397; *Camp v. Scott,* 14 Vt. 387; *Field v. Nickerson,* 13 Mass. 131; *Turner v. Benjamin,* 74 Wis. 355, 17 Am. St. 168, 43 N. W. 149, 5 L. R. A. 533; *Merritt v. Todd,* 23 N. Y. 28, 80 Am. Dec. 243; *Parker v. Stroud,* 98 N. Y. 379, 50 Am. Rep. 685.)

The doctrine of continuing security logically should be applied while such demand note remains in the hands of the original payee, but has no application after such note has been transferred. (1 Daniel, Neg. Instruments, 5th ed., sec. 610; *Bassenhorst v. Wilby,* 45 Ohio St. 339, 13 N. E. 78.)

The later decisions, and particularly those applicable under our negotiable instruments law, support the contention that

under the facts shown in this record it follows as a matter of law that an unreasonable length of time had elapsed after the issue of the note sued upon before its presentation and notice of dishonor, and that a like unreasonable time had elapsed after its original issuance and indorsement by appellants and before its reissue or sale to Smith, the immediate assignor of the plaintiff. (*Kerby v. Wade*, 101 Ark. 543, 142 S. W. 1121; *Becker v. Horowitz*, 114 N. Y. Supp. 161.) McRae indorsed for the purpose of transfer of title without consideration and was one of the payees named in the note. Such indorsement was regular and carries with it only the contract and warranty of indorsement expressed by the statute. (*Bank of Jamaica v. Jefferson*, 92 Tenn. 537, 36 Am. St. 100, 22 S. W. 211; *Sibley v. American Nat. Bank*, 97 Ga. 126, 25 S. E. 470.)

G. W. Tannahill and S. O. Tannahill, for Cross-appellant.

Payment was demanded within a reasonable time, considering the nature of the instrument and the facts of the particular case. (Sec. 3650, Rev. Codes; 7 Cyc. 975; *Durnell v. Sowden*, 5 Utah, 216, 14 Pac. 334; 1 Daniel on Neg. Instruments, secs. 606–608; *Mochado v. Fernandez*, 74 Cal. 362, 16 Pac. 19; 1 Parsons on Notes and Bills, 375.)

Under the facts of the case, the Bank of Nez Perce and appellants McRae and Schultz may properly be considered to have waived their right to presentment of the notes. (*Bessenger v. Wenzel*, 161 Mich. 61, 125 N. W. 750; *Garthwaite v. Bank of Tulare*, 134 Cal. 237, 66 Pac. 326.)

It may further very properly be held that the Bank of Nez Perce waived demand and presentment for payment by taking security. (*Barrett v. Charleston Bank*, 2 McMull. L. (S. C.) 191; *Watts v. Mitchell*, 6 How. (Miss.) 131; *Posey v. Decatur Bank*, 12 Ala. 802; *Mead v. Small*, 2 Me. 207, 11 Am. Dec. 62; *Worley v. Johnson*, 60 Fla. 294, 53 So. 543, 33 L. R. A., N. S., 639.)

As to the $812 note, McRae and Schultz were not entitled to demand, protest or notice of nonpayment, being themselves accommodated parties. (*Bank of Jamaica v. Jefferson*, 92

Tenn. 537, 36 Am. St. 100, 22 S. W. 211; 2 Daniel on Neg. Instruments, 5th ed., secs. 995b, 1085.)

"Where one who indorses a note is in fact a principal in the transaction, he is not entitled to notice of nonpayment." (*Furth v. Baxter,* 24 Wash. 608, 64 Pac. 798.)

The paper was reissued, sold and delivered without any limitation or restriction on the bank's indorsement, and full faith and credit was entitled to be given to it, as it appeared upon the instrument, and Smith so relied upon it. The bank now seeks to escape liability for its own neglect. (*Moore v. First Nat. Bank,* 38 Colo. 336, 120 Am. St. 120, 88 Pac. 385, 10 L. R. A., N. S., 260, 12 Ann. Cas. 268; *St. John v. Roberts,* 31 N. Y. 441, 88 Am. Dec. 287; *Scott v. First National Bank,* 71 Ind. 445; Selover, Neg. Instruments, pp. 66, 67; *French v. Jarvis,* 29 Conn. 347.)

Accommodation indorsers, who have under their own control and management all the assets and business of their principal, and whose duty it is to see that funds are provided and the debt paid, are not entitled to notice of the dishonor of his promissory note which they have indorsed. (*Hull v. Myers,* 90 Ga. 674, 16 S. E. 653.)

E. O'Neill, for Respondent, Bank of Nez Perce.

The notes were paid and thereby disposed of for all purposes prior to their reissue by J. A. Schultz in delivering the same to T. W. Smith, or there was a sale of the notes, and payment means discharge. (*Porter v. Title Guaranty & Surety Co.,* 17 Ida. 364, 106 Pac. 299, 27 L. R. A., N. S., 111; *Citizens' Bank v. Lay,* 80 Va. 436; *Ballard v. Greenbush,* 24 Me. 336; *Havens v. Huntington,* 1 Cow. (N. Y.) 387; *St. John v. Roberts,* 31 N. Y. 441, 88 Am. Dec. 287.)

Schultz, as an indorsee of the note of $812 dated July 1, 1907, had the right to protect his own indorsement by payment of the note. Such payment extinguishes the note as to the payee and indorsers upon the note; a right to contribution between indorsers only would remain. (*Gordon v. Wansey,* 21 Cal. 77; *Yule v. Bishop,* 133 Cal. 579, 65 Pac. 1094; *James v. Yaeger,* 86 Cal. 187, 24 Pac. 1005; *Wright v. Mix,* 76 Cal.

465, 468, 18 Pac. 645; *Stevens v. Hannan,* 88 Mich. 14, 49
N. W. 874; *Fitch v. Hammer,* 17 Colo. 595, 31 Pac. 336;
*Moran v. Abbey,* 63 Cal. 56; *Binford v. Adams,* 104 Ind. 41,
3 N. E. 753.)

If the notes were afterward assigned by the instrument
designated as an assignment, it would be subject to the pre-
vious payment of the notes. The written assignment is of no
validity, because an instrument of conveyance without a
grantee named in it is a nullity. (1 Devlin on Deeds, 1st ed.,
sec. 189.)

This instrument could not be given by insertion of a gran-
tee's name (Smith) by Miller, long after Miller ceased to be
an official of the Bank of Nez Perce. (*Ellis v. Bashor,* 17 Ida.
259, 105 Pac. 214.)

SULLIVAN, J.—This is a separate appeal taken by the de-
fendants McRae and Schultz from a judgment entered on a
promissory note against them and from the order of the court
overruling their motion for a new trial.

The action was brought to foreclose a mortgage upon un-
patented mining claims, executed by the Del Rio Mining &
Milling Co., a corporation, securing two promissory notes, one
for $812 dated July 1, 1907, payable on demand to the
defendants B. J. McRae and J. A. Schultz and one T. M.
Mockler, now deceased. The other promissory note was for
$700, dated July 3, 1907, payable on demand to the Bank
of Nez Perce. The said first-mentioned note was transferred
by indorsement to the Bank of Nez Perce by McRae, Schultz
and Mockler on or about July 1, 1907, the date of the note.
On October 12, 1907, the Bank of Nez Perce, as owner of said
notes, procured from the said Del Rio Mining Co. the execu-
tion of a mortgage on the company's mining claims, which
mortgage is sought to be foreclosed in this action. Both of
said notes were expressly made payable at the Bank of Nez
Perce. The mortgage was at the request of the bank executed
in favor of its assistant cashier, P. J. Miller. There is no
contention that Miller ever had any beneficial interest in either
of said notes or mortgage. After the execution of the notes

and mortgage, the notes remained continuously in the Bank of Nez Perce and were carried as an asset of the bank until October 22, 1908, nearly sixteen months after the execution of the $812 note, during which time it is conceded the bank made no effort to enforce payment against said principal defendant, nor did the bank during this time ever present the said notes to the said payor, the Del Rio Mining Co., nor give to the indorsers any notice of dishonor of the notes. In the original complaint the essential facts of presentment and demand on the maker and payor, the Del Rio Mining Co., and notice of dishonor to the indorsers, are not alleged. In the amended complaint, after a demurrer had been filed against the original complaint, an attempt is made to allege the fact of presentment, demand, etc. However, no date or circumstances of such demand or notice is alleged, nor when, by whom, how, where or on whose behalf the presentment and demand was made. The defendants in their answer to the amended complaint specifically deny that such demand or notice has been made or given or at any time or place. The Bank of Nez Perce also filed a separate answer alleging, among other things, that said notes had been paid by said Schultz to the said bank.

Upon the issues thus made the cause was tried by the court and findings of fact were made and judgment entered against the Del Rio Mining Co. for the full amount of both of said notes, with interest, etc., and a decree for the foreclosure of said mortgage. A separate judgment was entered against McRae and Schultz on the $812 note for the sum of $1,546, principal, interest and attorney's fees.

The court found, among other things, as follows:

"That the said note bearing date July 1st, 1907, for $812.00 was given at the request of B. J. McRae, T. H. Mockler and J. A. Schultz and for their benefit and their accommodation.

"The court further finds that B. J. McRae was an officer, stockholder, and director of the Del Rio Mining & Milling Company, Limited, and that the said T. M. Mockler, J. A. Schultz and B. J. McRae were interested in the success of said mining corporation, and that the money advanced by the Bank of Nez Perce, for which the said $812.00 note was given

was advanced at the request of B. J. McRae, T. M. Mockler and J. A. Schultz, and that by reason thereof the said B. J. McRae, T. M. Mockler and J. A. Schultz were not entitled to notice of presentment of the said promissory note to the said Del Rio Mining & Milling Company, Limited, and of its dishonor.''

The trial court evidently considered said two findings as vital and controlling in its decision against McRae and Schultz. It found that said note of $812 was given at the request of McRae, Mockler and Schultz and for their benefit and accommodation, and for that reason they were not entitled to notice or presentment of said promissory note to the Del Rio Mining Co. and of its dishonor.

The decision of the trial court no doubt was largely based upon said findings and upon the ground that under the facts of the case McRae and Schultz were not entitled to demand or notice of dishonor to fix their liability. The court, however, does find that on or about the 12th of October, 1907, one T. W. Smith demanded payment of said note from the Del Rio Mining Co., and that McRae and Schultz had full notice of said demand. The record shows that T. W. Smith was not the owner of said notes in 1907, and did not become the owner until October 22, 1908. The court also found that said mortgage was assigned to Smith on October 22, 1908, and that the notes were at all times held in the Bank of Nez Perce up to the time of the assignment to T. W. Smith. The evidence does not support said finding.

The record shows, among other things, the following facts: Some time prior to 1907, the Del Rio Mining Co. was indebted to the defendant Bank of Nez Perce. The defendants Schultz and Mockler at that time were officers or stockholders of said bank. The defendant McRae was a small stockholder in said mining company. For the purpose, apparently, of protecting the bank as such creditor, Mockler and Schultz requested said McRae to see that the annual assessment work was performed upon the mining. claims of said company. Mockler and Schultz were absent from the city at the time it became necessary to have this work done to prevent a forfeiture, and

it was accordingly arranged that McRae should make arrangements with one Leach to perform said assessment work, and said Leach was to draw drafts upon the Bank of Nez Perce in payment therefor.  Under that arrangement the assessment work was performed for the Del Rio Mining Co. and the drafts given in payment therefor were duly paid by said bank and charged to the Del Rio Mining Co. as an overdraft.  The indebtedness thus created by the Del Rio Mining Co. was afterward formally ratified by the stockholders, and it is alleged in the complaint that the Del Rio Mining Co. actually received full benefit of the note executed by the said Del Rio Co. in payment of said indebtedness.  So it is left beyond controversy that the original claim of the bank was an indebtedness against the Del Rio Mining Co. and not in any sense against Schultz, McRae and Mockler, who merely acted on behalf of the Del Rio Mining Co. in ordering the work done.

The Del Rio Mining Co., at the request of the bank, on July 1, 1907, to take up said overdrafts, executed a note of $812 in favor of McRae, Schultz and Mockler.  This matter was arranged between the bank and the Del Rio Mining Co. without any consultation with the defendant McRae, and the note was made out in favor of McRae, Mockler and Schultz for the reason that Leach, who had performed the assessment work, had filed the proof of labor in the name of McRae, Mockler and Schultz, and it is a fair inference that its officers had in mind the securing of a voucher to show that they had reimbursed the parties in whose name said proof of labor was filed. However, whatever may have been the object, the fact is undisputed that the note was made without McRae's request and that he was afterward requested to indorse it for the purpose of transferring the apparent legal title of the note to the bank.  There is no dispute that the proceeds of that note went exclusively to the use and benefit of the Del Rio Mining Co. and was used to take up the existing indebtedness of that company to the bank, and that the note was not in any degree for the benefit of either McRae, Mockler or Schultz, and there is no evidence in the record that warrants the conclusion that any money, credit, extension of time or other due

consideration was advanced by the bank on the strength of said note.

There is no evidence of any understanding or any agreement, express or implied, that said note so made payable on demand should be permitted by the bank to run for any length of time. To the contrary, it appears that said note was taken as evidence of an existing indebtedness, long past due, from the Del Rio Mining Co. to the bank, so the court's finding that said note of $812 was given at the request of said McRae, Schultz and Mockler and for their benefit and accommodation is not supported by the evidence, and the undisputed proof is precisely the reverse, viz., that the defendant McRae was requested by the bank to indorse the note and that Mockler and Schultz were mere accommodation indorsers of the Del Rio Mining Co.

There is absolutely no evidence sustaining the finding of the court above quoted, to the effect that the $812 note was given at the request of McRae, Mockler and Schultz and for their benefit and accommodation. The note was given for the accommodation and benefit of the Del Rio Mining Co. in payment of assessment work done on the claims owned by that corporation. As a matter of fact, Schultz and Mockler, being officers of the bank and also of the Del Rio Mining Co., made arrangements with the bank for the Del Rio Mining Co. for the payment of certain assessment work to be done upon said company's mines, and the $812 represented by said promissory note was paid out and expended for that purpose, and not for the benefit and accommodation of McRae, Mockler and Schultz. The promissory note was taken in the name of McRae, Mockler and Schultz as payees because the notice and affidavit of the performance of the assessment work stated that it was done for McRae, Mockler and Schultz, and the bank suggested that the note be taken in their names for that reason, and that they indorse it over to the bank, which was done. Schultz thereafter paid said note in full to the bank and subsequently sold and reissued the note to one Smith, or traded it for some real estate, with the distinct agreement and understanding that Smith should take the note and the mort-

gage securing its payment without recourse on the indorsers, which he did after having examined the mining claims and come to the conclusion that the mining claims were of as much or more value than said promissory note, or that they were sufficient security for the payment of said note. The mortgage was taken in the name of P. J. Miller, the assistant cashier of the bank, and on instructions from Schultz he assigned that instrument to Smith without recourse, and it was Smith's understanding and agreement with Schultz that he took said note and mortgage without recourse on either of the indorsers. Said note not having been given for the benefit and accommodation of said parties, the finding of the court that for that reason McRae, Mockler and Schultz were not entitled to notice of presentment of said promissory note to the said Del Rio Mining Co. and of its dishonor is not supported by the evidence and it is not a proper conclusion to be drawn therefrom.

Said Smith purchased said note and mortgage on the 22d day of October, 1908, and thereafter transferred it to the plaintiff in May, 1911, nearly four years after said note was executed. Plaintiff made no inquiry about the note, so far as the record shows, until after he had purchased it or traded a block of land for it. Said note was executed on July 1st, 1907, and made payable on demand. The general rule is that a note payable on demand is payable within a reasonable time, and, under all of the facts of this case, it is clear that such reasonable time had long passed and expired when the plaintiff purchased the note, and he stood in the position of the Nez Perce bank, so far as enforcing it against the indorsers is concerned, said bank being the real owner of the note from the time it was paid and taken up by Schultz as above set forth, and all defenses that could be set up against a note purchased after the same became due were available to McRae and Schultz.

It also conclusively appears that said note for $812, upon which judgment was rendered against the appellants, as well as said $700 note, was fully paid by appellant Schultz while the bank was the owner and holder thereof, on October 22d,

1908, and that said notes were thereupon delivered to said Schultz and treated by the bank as canceled and paid. The trial court found that the defendant Schultz, after paying said promissory notes to the bank, reissued them to T. W. Smith. It is clear from the evidence that McRae had no notice of such reissuance and never consented thereto. The evidence shows that it was understood between Schultz and Smith at the time Smith purchased said notes that he was to take them without recourse and that the notes were to be assigned to him without recourse. At the time the trade occurred, Smith stated that he had examined the mines and considered them good for the amount of the notes and Schultz agreed to assign the notes to Smith without recourse. The mortgage was assigned without recourse, but evidently through some oversight the notes were delivered to Smith without so assigning them.

Smith received said notes on October 22, 1908, and did not transfer them until May 4, 1911, and during all of that time did not present them for payment of interest or principal and the plaintiff took the notes not as a *bona fide* purchaser in due course under the law. That being true, it was his business to know what he was purchasing, as a note payable on demand is payable within a reasonable time after its execution. (Sec. 3528, Rev. Codes.)

Under all the facts of this case, the plaintiff was not a purchaser in due course, and certainly could have no better rights thereunder than the original payee of the notes. He took them as a speculation and took his chances on forcing said indorsers, who had received no benefit therefrom whatever, to pay them. Schultz paid the bank the amount due on the notes, and Dowd, the cashier of the bank, testified that they were delivered to him for the purpose of cancelation. If that be true, that ended the transaction. There was no contract with reference to the transfer of the notes at that time and Schultz says he does not remember that there was anything said about his right to transfer the notes. Schultz being an indorser on the notes, and having paid them, would have had the right to call on his coindorsers for their *pro rata* share,

but under the facts of this case he had no right to reissue them without the consent of the other indorsers. Payment of the note means a discharge of the liability. A sale of a note implies a contract, and a sale cannot occur without a contract between the parties—the owner of the note and the one desiring to purchase it. The bank owned the note; Schultz was an indorser thereon and he paid it. In order to form a valid contract, the minds of the contracting parties must meet.

In the case of the *Citizens' Bank v. Lay,* 80 Va. 436, the court held that the payment of a note at a bank is either a sale or a discharge thereof. A sale cannot be made without the bank's consent and where the note is paid by one bound for its payment at maturity, the note is thereby actually discharged and cannot be reissued by him so as to bind the parties thereto or to keep alive a trust deed executed to secure it, except with the knowledge and consent of those parties.

Schultz, as an indorser on the $812 note, had the right to protect his own indorsement by the payment of the note. Such payment extinguishes the note as to the payee and the indorsers upon the note. A right of contribution between the indorsers was the only remedy left him.

It was held in *Binford v. Adams,* 104 Ind. 41, 3 N. E. 753, as follows:

"There is an important difference between the payment of a note and the purchase of it from the owner. Payment is the discharge of a debt; the purchase of a note is a contract of sale. The sale of a note, in order to be valid, must be made by a buyer to a seller; there must be mutual assent, and there must also be a consideration."

The evidence of Dowd and Schultz and the books of the bank clearly show that the transaction was a payment of the said notes. That transaction ended the liability of the Bank of Nez Perce and McRae and Schultz so far as said notes were concerned, up to the time Schultz reissued them to Smith. The reissuance of the notes to Smith is a matter with which the Bank of Nez Perce and McRae had nothing to do, as neither gave his consent nor knew of that transaction. Neither took any part whatever in the transaction. The re-

issuance of said note by Schultz is a matter that interests only Schultz and the plaintiff. Schultz testified that the notes were given to Smith with the express understanding that they were to be taken without recourse upon any indorser; that Smith had examined the mines and was willing to take the notes merely for the value he saw in the mines, and that the transfer to him was with that express understanding.

This virtually disposes of this case in favor of the appellants McRae and Schultz. Under all of the facts in the case, the court erred in entering judgment against McRae and Schultz and the judgment against them must be reversed, and it is so ordered, and the cause is remanded with instructions to the trial court to make findings of fact in accordance with the views expressed in this opinion, and to enter judgment in favor of McRae and Schultz. The judgment is affirmed as to the Bank of Nez Perce and the Del Rio Mining & Milling Co.

Costs are awarded to the appellants.

Ailshie, C. J., and Stewart, J., concur.