HIRSCH v. PEOPLE'S BANK OF PLAQUEMINE, LA., et al.

In re LOUIS DANOS PLANTING & MFG. CO.

(Circuit Court of Appeals, Fifth Circuit. March 23, 1917.)

No. 3009.

BILLS AND NOTES ☜426—PAYMENT.

The holder of notes secured by a mortgage on land acquired by a bankrupt corporation, which assumed payment, demanded payment from an officer of the corporation, who was a son of the original maker. On suggestion of the officer, appellant agreed to carry such notes, whereupon the corporation paid to the holder the amount due on the notes, obtaining the money on demand notes. The notes were then delivered to appellant, and the demand notes taken up with funds paid by him. *Held* that, as the corporation merely acted as intermediary, the notes were not extinguished, the original maker never acquiring possession, under the rule that the legal result of a debtor's payment of his debt is to extinguish it,

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and his reissue of the instrument evidencing the obligation does not re-
vive it, or a mortgage which secured it.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1223–
1232.]

Appeal from the District Court of the United States for the Eastern
District of Louisiana; Rufus E. Foster, Judge.

In the matter of the bankruptcy of the Louis Danos Planting &
Manufacturing Company. From a decree disposing of the final ac-
count of Dr. J. L. Danos, trustee, on opposition of the People's Bank
of Plaquemine, La., and of the petition of Emile Hirsch, the latter ap-
peals. Reversed.

Paul G. Borron, of Plaquemine, La., and Clarence S. Hebert, of
New Orleans, La., for appellant.

J. H. Pugh, of Plaquemine, La., and Walter Lemann, of Donaldson-
ville, La. (Edward N. Pugh, of Donaldsonville, La., on the brief), for
appellees.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge. In January, 1906, Louis Danos made a
series of notes, each payable to his order, amounting in the aggregate
to $60,000, which were secured by a mortgage and vendor's lien or
privilege on the Milly plantation. Thereafter the mortgaged property
was conveyed to the L. Danos Planting & Manufacturing Company,
a corporation, which will be referred to as the Danos Company. By the
act of sale to that company it assumed the outstanding mortgage and
vendor's privilege notes, but the holders of those notes were not par-
ties to that transaction. The Danos Company was adjudged bank-
rupt, and the Milly plantation was sold under orders made in the bank-
ruptcy proceeding. Emile Hirsch presented four of the above-mention-
ed notes, aggregating $6,500. The People's Bank of Plaquemine, the
holder of some of the secured notes, opposed the allowance of the
notes presented by Hirsch as claims against the proceeds of the sale
of the mortgaged property on the ground that those notes were paid
by the Danos Company, it being averred that three of them, aggregat-
ing $4,000, were paid on February 8, 1912, and that the remaining
note, for $2,500, was paid on February 21, 1912. This opposition was
sustained as to the three notes alleged to have been paid on February
8, 1912, and was overruled as to the $2,500 note alleged to have been
paid on February 21, 1912. The appeal is from a decree to this effect.

In January, 1912, the notes in question, and others of the series,
were held by Dr. W. A. Holloway, and became payable by the ex-
piration of the time for which the original dates of payment had been
extended. Dr. Holloway then made it known that "he would like to
have some money." Dr. J. L. Danos, who was a son of the maker of
the notes and also an officer of the Danos Company, between the date
of the maturity of the notes on January 2 and February 8, 1912, had
several conversations with Dr. Holloway in regard to the notes held
by the latter. Dr. Holloway made it known that he "could do with
about $6,500," and that he was willing for some one else to take up

and carry that amount of the notes he held. Dr. Danos applied to several persons, including Emile Hirsch, to take and carry some of the notes held by Dr. Holloway. Hirsch agreed to take $6,500 of those notes. What seems to us to be the convincing preponderance of the evidence is to the effect that this agreement by Hirsch with Dr. Danos was made prior to the delivery of $4,000 of the notes by Dr. Holloway to Dr. Danos on February 8th, and that at that time the understanding between Dr. Danos and Hirsch was that the latter would on February 21st have in hand the amount in cash required to pay for $6,500 of the notes held by Dr. Holloway. The testimony of Dr. Danos to the effect that Hirsch's agreement to take the $6,500 of notes was made after February 8th is in conflict with that of several other witnesses, some of whom were disinterested, and is not in harmony with his own previously given version of his transaction with Hirsch.

Furthermore, there was evidence tending to prove that Dr. Danos was improperly influenced to change his version of the Hirsch transaction, in that he was a party to an agreement or understanding with the purchaser of the mortgaged property, which had the effect of making it to the interest of the Danos family to defeat the asserted right of Hirsch to participate in the distribution of the amount for which that property was sold. On February 8th, after Hirsch had agreed to take $6,500 of the notes on February 21st, Dr. Holloway delivered three of the notes, aggregating $4,000 principal, to Dr. Danos, and received from the latter the Danos Company's check on the People's Bank of Plaquemine for $4,032, being the amount of the notes, with interest, from January 2d to February 8th. On the date this check was drawn the drawer did not have to its credit in the drawee bank the amount required to meet the check. On February 9th the drawee bank lent $4,000 on a demand note made to it by the Danos Company, credited that company's account with that amount, and paid the check given to Dr. Holloway when it was presented on the 9th. On February 21st Dr. Danos received from Dr. Holloway another of the notes held by him, one for $2,500, gave him the Danos Company's check on the same bank for $2,527.78, being the principal and interest to that date, delivered to Hirsch that note, and also the three notes obtained from Dr. Holloway on the 8th, and received from Hirsch his check on the Iberville Bank & Trust Company for $6,572.22, payable to the order of the Danos Company. The amount of this check was the principal of the four notes, with interest thereon to February 21st. This check was deposited in the People's Bank of Plaquemine to the credit of the Danos Company, and the proceeds of it were used in paying the Danos Company's demand note of the 8th and the check given to Dr. Holloway on the 21st.

When the three notes delivered by Dr. Holloway to Dr. Danos on the 8th were delivered to Mr. Hirsch on the 21st, they were in the same condition in which they were when Dr. Holloway parted with them on the 8th. On the back of each of them was the indorsement in blank of Louis Danos and entries showing payments of interest and extensions of the time of maturity. Nothing on either of the notes indicated that the principal amount it called for had been

paid in whole or in part. No party to the transactions of the 8th, 9th, and 21st intended or understood that those transactions, or any of them, had the effect of paying or extinguishing the four notes in question, or either of them. Dr. Holloway, who was unwilling to grant further extension or indulgence as to all the notes he held, consented to transfer part of them to another, who was willing to take and hold them if such a person could be found, and, at the time of the deliveries made by him to Dr. Danos, understood that the latter was getting the notes for a third person who had agreed to buy them. Dr. Danos did not understand or intend that anything he did, individually or in the name of the Danos Company, effected a payment or extinguishment of the notes, and delivered them to Mr. Hirsch as existing secured obligations. Mr. Hirsch bought the notes as an investment, understanding that as to them he succeeded to all the rights of Dr. Holloway, the former holder. Louis Danos, the maker of the notes, never reacquired possession of them after he indorsed and delivered them to another holder, did not provide or furnish the money to meet the check given to Dr. Holloway on the 8th, and, when the notes were delivered to Mr. Hirsch on the 21st, distinctly manifested his understanding that they were still in force by signing a memorandum on each of them showing that it was extended to January 2, 1915. It was not made to appear that either Dr. Holloway or Mr. Hirsch was even aware that the Danos Company had assumed the payment of the notes. The former in accepting the Danos Company's checks, and the latter in giving his check to that company, cannot be regarded as dealing with a party whose relation to the notes was that of the maker of them.

What all the parties to the transactions intended was a transfer of the notes from one holder to another. The claim that the notes were paid contrary to the intention of all the parties to the dealings is sought to be supported by invoking the rule that the legal result of a debtor paying his debt is to extinguish it, and that his reissue of the instrument evidencing the obligation does not revive it or a mortgage which secured it. Hibernia National Bank v. Succession of Gragard, 109 La. 678, 33 South. 728. The evidence in the case negatives the existence of such a state of facts. Louis Danos, the sole maker of the notes, did not make the alleged payment, and, so far as the evidence indicates, has never had the notes in his possession since he indorsed them. The dealings of Dr. Holloway and Mr. Hirsch with reference to the notes were not with the maker of them, but with Dr. Danos, a total stranger to the notes, so far as Dr. Holloway and Mr. Hirsch knew or were concerned. Dr. Danos by his conduct manifested an interest and purpose to postpone collection of the notes, instead of bringing about the payment of them. He negotiated and arranged with Dr. Holloway and Mr. Hirsch for a transfer of the ownership from the former to the latter. Obviously the transaction with the bank was but a means adopted in bringing about this result.

The rule invoked does not stand in the way of even the maker of matured notes, or one who has assumed the obligation of the maker, arranging for a transfer of them from a holder who is unwilling to grant a desired extension of the time of payment to one who consents to buy

and hold them as an investment. The maker may act as an intermediary in carrying out such an arrangement when made, as by procuring a third person to pay to the transferor the consideration for the transfer prior to the time when the agreed transfer is to be consummated by the transferee paying the consideration and taking the notes. Where, as in this case, all the parties to the transaction clearly intended a purchase by Mr. Hirsch of notes held by Dr. Holloway, with the security unimpaired, and understood at the time that this result was accomplished by what was done, the transaction is to be given effect as a purchase without regard to the mode adopted to accomplish the intended result. Dodge v. Freedman's Sav. & Trust Co., 93 U. S. 379, 23 L. Ed. 920; Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868; Swope v. Leffingwell, 72 Mo. 348; Johnston v. Schnabaum, 86 Ark. 82, 109 S. W. 1163, 17 L. R. A.(N . S.) 838, 15 Ann. Cas. 876; Gernon v. McCan, 23 La. Ann. 84; Casco National Bank v. Shaw, 79 Me. 376, 10 Atl. 67, 1 Am. St. Rep. 319; 3 R. C. L. 1268; 7 Cyc. 1025. The conclusion is that the notes held by Mr. Hirsch have not been paid, were in full force and effect when he acquired them by purchase, and remained secured by the mortgage and vendor's lien or privilege.

It follows that the decree under review should be reversed; and it is so ordered.