POLLOCK et al. v. NATIONAL CITY BANK OF CHICAGO.

(Circuit Court of Appeals, Eighth Circuit. September 1, 1919.)

No. 5303.

1. GUARANTY ☞59—EFFECT OF TRANSFER OF INSTRUMENT AS DISCHARGE OF GUARANTORS.

A transfer of bonds of a corporation, with three guarantors, on the day of their maturity, by their then holder, to plaintiff bank as collateral to a draft drawn in its favor by one of the guarantors, which was discounted by plaintiff and the money paid to such holder, and on payment of which the bonds were to be delivered to the drawee, *held* not to operate, contrary to the intention of the parties, as a payment of the bonds, or as a transfer of title to the drawer, which released the other guarantors.

2. GUARANTY ☞60½—GUARANTORS NOT DISCHARGED BY AGREEMENT AFFECTING SECURITY.

When by express provision of a trust deed securing bonds of a corporation that, in case of extension of any of the bonds by agreement between the holder and maker, they should be subordinated in lien to the later maturing bonds, guarantors, whose guaranty was subject to the terms of the trust deed, *held* not released by a transfer of the first maturing bonds on the day of their maturity by a transaction to which the vice president and executive officer of the corporation was a party, and in which the bonds were stamped to show such subordination.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Action at law by the National City Bank of Chicago against Robert M. Pollock and others. Judgment for plaintiff, and defendants bring error. Affirmed.

This is an action by the National City Bank of Chicago on the written guaranty of the defendants, Robert M. Pollock, M. Kittel, and R. C. Kittel, to pay bonds of the Northern Trading Company, a corporation, aggregating $10,000, on which $4,000 had been paid. R. C. Kittel was not served with process. Robert M. Pollock and M. Kittel, hereafter called the defendants, answered that all the bonds of the Trading Company amounting to $100,000, of which those in this action were a part, were as a part of the same transaction as their guaranty, secured by a trust deed or mortgage upon land in North Dakota; that they signed their guaranty in consideration of a simultaneous promise of R. C. Kittel that he would pay the bonds at maturity and save them harmless from the guaranty; that on February 1, 1915, when the bonds in this action matured, R. C. Kittel paid Peabody-Houghteling & Co., a corporation, the holder of these bonds, the full amount due thereon, and induced it to surrender them to him without cancellation upon an agreement indorsed thereon without their knowledge or consent that the bonds should be subordinated in security and payment from the mortgaged lands to all the other bonds and coupons secured thereon; that the mortgaged lands have been sold under a decree of foreclosure and all the proceeds of the sale have been applied to the payment of the other bonds, so that nothing has been or can be derived from the security to pay the bonds upon which their guaranty here in suit was indorsed.

A jury was waived, and the case was tried by the court, which made specific findings of the facts, stated its conclusions of law, and rendered judgment against the defendants for the $6,000 and interest. At the close of the evidence the defendants requested the court to find that the undisputed evidence established ten specific statements of fact. The court declined so to do, and the defendant excepted to that ruling, and to each of the findings of fact which the court made, and to each of the conclusions of law it stated. They also excepted to the exclusion by the court of the evidence of the agreement of R. C. Kittel with the defendants to pay the bonds and save them harmless from their guaranty.

The court's findings of facts 6, 6½, and 9 read in this way:

"(6) That on February 1, 1915, $10,000 par value of said bonds were due and were on said date in the hands of Peabody-Houghteling & Co., at Chicago, Ill., for collection; that said bonds were due according to the terms of the same and of said trust deed on February 1, 1915, and were payable at the office of Peabody-Houghteling & Co., Chicago, Ill.; that on said date, the defendant R. C. Kittel, who was also the manager and vice president and active executive officer of the maker, the Northern Trading Company, and who was also a member of the copartnership of R. C. Kittel & Co., requested the plaintiff, in its banking house in Chicago, Ill., during banking hours, and in due course of business, to advance the sum of $10,000 upon a draft for $10,000 to be drawn by R. C. Kittel upon R. C. Kittel & Co., at Casselton, N. D., payable through the First National Bank of Casselton, N. D., said bonds in the sum of $10,000 to be attached to said draft, said R. C. Kittel then and there stating and representing to the plaintiff that said bonds had been sold to parties residing at or in the vicinity of Casselton, N. D., and that said draft would be paid and said bonds taken by said purchasers upon said bonds arriving at Casselton, N. D.; that thereupon, and on said 1st day of February, 1915, at its banking house in Chicago, Ill., during banking hours, and in due course of business, and in the presence of a representative of said Peabody-Houghteling & Co., who then and there had in his possession and presented to the plaintiff said bonds of the par value of $10,000, there was delivered to plaintiff a certain draft, dated February 1, 1915, payable on demand to the order of the plaintiff in the sum of $10,000 drawn by R. C. Kittel on R. C. Kittel & Co., Casselton, N. D., payable through the First National Bank

of Casselton, N. D., which said draft was, pursuant to the instructions hereinafter named by the plaintiff, in the usual course of business sent to the First National Bank of Casselton, with instructions to the First National Bank of Casselton to deliver any one or all of the bonds upon payment of face plus 6 per cent. interest from February 1, 1915, and to report each delivery and remit to plaintiff; that at the same time, and simultaneously with the delivery of said draft to the plaintiff, there was delivered a certain cashier's check, dated February 1, 1915, payable to the order of R. C. Kittel in the sum of $10,000, which said check was signed by the plaintiff, and then and there simultaneously with the other said transactions said cashier's check was indorsed by R. C. Kittel to Peabody-Houghteling & Co., and delivered to the representative of Peabody-Houghteling & Co., who thereupon delivered said $10,000 par value of bonds to the plaintiff, to be, and which were, attached to said draft; that said cashier's check was thereafter, and on February 3, 1915, through the medium of the Chicago Clearing House, duly paid by the plaintiff to the order of the said Peabody-Houghteling & Co.; that at the time of the delivery of said $10,000 par value of said bonds, there was stamped upon same by Peabody-Houghteling & Co. the following: 'The within bond is sold to and purchased by R. C. Kittel & Co. on the distinct agreement that as to the lien of the trust deed securing the same it is subordinate to all the other bonds and coupons thereby secured, maturing after February 1, 1915.'"

"(6½) All the foregoing transactions between the plaintiff, Peabody-Houghteling & Co., and R. C. Kittel, with respect to said $10,000 of bonds, maturing February 1, 1915, were had without knowledge of either of the defendants, Robert M. Pollock or Martin G. Kittel."

"(9) The plaintiff took and acquired said bonds in good faith, for full value, and before maturity, and without notice or knowledge of the agreement with R. C. Kittel alleged in the answer of the defendants Robert M. Pollock and M. Kittel."

As conclusions of law the court found: (1) That the plaintiff acquired and holds the bonds to the amount of $6,000 as innocent bona fide purchaser, and has a lien thereon for $6,000 and interest from February 1, 1915; (2) that these bonds were not canceled or paid by the payment of the $10,000 to Peabody-Houghteling & Co.; and (3) that there have been no extensions, alterations, or modifications of the obligations guaranteed that were not within the terms of the contract of guaranty, the bonds, and the trust deed, and that were not consented to and agreed to by the plaintiffs.

Edward Engerud, of Fargo, N. D. (Engerud, Divet, Holt & Frame and James W. Pollock, all of Fargo, N. D., on the brief) for plaintiffs in error.

A. W. Cupler, of Fargo, N. D. (Ed. Pierce and B. G. Tenneson, both of Fargo, N. D., and G. L. Wire, of Chicago, Ill., on the brief), for defendant in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge (after stating the facts as above). [1] The first reason why counsel for the defendants argue that the judgment below should be reversed is that the court below failed to find that the transaction of February 1, 1915, described in its findings was not, as to the defendants, a payment and discharge of the bonds by R. C. Kittel or R. C. Kittel & Co. Their contention is that either R. C. Kittel or R. C. Kittel & Co. by this transaction paid or bought the bonds on which as collateral they borrowed $10,000 of the bank; that, as R. C. Kittel was the coguarantor with the defendants of the obligation of the bonds, neither he nor R. C. Kittel & Co. could maintain any action on the guaranty against the defendants, and as the bank

derived all its rights from either Kittel or Kittel & Co., it cannot do so. If R. C. Kittel, or R. C. Kittel & Co., had paid the bonds, and the bonds had been surrendered to one of them, it may be conceded that their remedy against the defendants would have been an action for contribution, that they could not have maintained this action on the guaranty, and that, if the bank had derived its right exclusively from them under such circumstances, it would have been in a like situation.

But the court below has found in its second conclusion of law that the bonds were not paid or canceled by the transaction in which they were transferred to the bank for the $10,000 which the bank paid to Peabody-Houghteling & Co. Repeated readings of the findings of fact and of the evidence relative to the transaction have left no doubt of the correctness of this conclusion. They have convinced that the in-tention of the parties to it, and the legal effect of it, was to preserve intact the obligation of all the guarantors to pay the bonds, as well as that of the mortgagor, and to transfer them to and vest them in the bank. The facts that R. C. Kittel drew his draft for $10,000 on R. C. Kittel & Co., payable to the bank, and delivered it to the latter, and that the bank drew and delivered its cashier's check to the order of R. C. Kittel for $10,000, which he immediately indorsed and delivered to Peabody-Houghteling & Co., have been thoughtfully considered.

But the findings and the evidence alike persuade that these acts were the mere means of accomplishing that transfer intact of the obligations of the guarantors and the Trading Company from Peabody-Houghtel-ing & Co. to the bank, which all the parties, before these drafts were drawn or delivered, had agreed to, and which, when they drew and de-livered the draft and check, they intended to make.' It is the province and duty of the court to look through the mere machinery used by par-ties to effect their intention, and, if that intention was innocent, if its fulfillment is lawful and just, while the failure to fulfill it will result in injustice or unintended loss to some of the parties, to effectuate their intention by its judgment, if there is no insuperable legal obstacle to the accomplishment of that result. No such obstacle is found here. There was no error in the conclusion of the court that the bonds were not paid by the transaction of February 1, 1915. Ketchum v. Dun-can, 96 U. S. 659, 24 L. Ed. 868; Hirsch v. People's Bank of Plaque-mine (La.) 240 Fed. 661, 153 C. C. A. 459.

Counsel assert, however, that, if the bonds were not paid, yet the guarantors were discharged from liability because R. C. Kittel be-came a holder of the bonds and the guaranty. They quote section 7004 of the Compiled Laws of North Dakota of 1913, which is section 119 of the Uniform Negotiable Instruments Law, which reads:

"A negotiable instrument is discharged * * * (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right"'

—and they argue that R. C. Kittel was the principal debtor in the guaranty, that by the transaction of February 1, 1915, he became the holder in his own right of the bonds and the guaranty, and by reason of that fact the defendants, who were coguarantors, were discharged.

But in reality R. C. Kittel never became the holder of the bonds nor of the guaranty. Peabody-Houghteling & Co. held them until it delivered them to the bank, and they never came into the actual possession or passed through the hands of R. C. Kittel. This was in accordance with the intention of the parties to keep the obligations of the Trading Company and of the guarantors alive, and to transfer them intact to the bank. Their acts were appropriate and effectual to accomplish this purpose. The right which R. C. Kittel or R. C. Kittel & Co. had to the bonds and the guaranty before the transaction was to receive the bonds and the guaranty upon the payment by them of $10,000 to the holder thereof and on no other terms. Peabody-Houghteling & Co. was the holder thereof.

At the same time that Kittel delivered his draft on R. C. Kittel & Co. to the bank, and the bank delivered its cashier's check indorsed by Kittel to Peabody-Houghteling & Co., that company delivered the bonds and the guaranty directly to the bank. The result was that the right of Peabody-Houghteling & Co. to the enforcement of the obligation of the bonds and of the guaranty vested in the bank at the instant of their delivery to it, subject only to the right of Kittel or Kittel & Co. to them on condition that they paid the $10,000 on account of them. Neither Kittel nor Kittel & Co. ever became the holder or holders of them in his or their own right, or in any right, because neither ever paid the $10,000, the payment of which was the indispensable condition of the right of either Kittel or Kittel & Co. to become the owner or owners, or holder or holders, of either the bonds or the guaranty. There was therefore no error in the conclusion of the court that the defendants were not released from their guaranty, either by a payment or by a purchase of the bonds or the guaranty by R. C. Kittel or R. C. Kittel & Co.

[2] Defendants claim that they were released by the fact that at the time of the transfer of the bonds to the bank they were by an agreement of the parties to the transaction of February 1, 1915, subordinated as to the security of the mortgaged lands to all the other bonds and coupons secured by the trust deed without their knowledge or consent. The evidence satisfies that the subordination was made without the knowledge of the defendants. The court below held, notwithstanding, that they had previously consented and agreed thereto by the provisions of their guaranty and of the bonds and trust deeds securing them.

By the guaranty on each of the bonds the defendants "unconditionally" guaranteed to the holder thereof its payment, expressly accepted all the provisions of the bond and of the trust deed, authorized the holder of the bond, without notice to either of them, to grant an extension or extensions of time of payment thereof, agreed that no dealing by such holder with the Trading Company, except by way of cash payment, should release them, and that in case of nonpayment of principal or interest when due suit might be brought by the holder of the bond against either of them, with or without the joinder of the Trading Company, at the option of the holder. The ninth article of the trust deed provides that, in the event that the time of payment of

principal or interest of any bond or bonds shall be extended by an agreement between the maker and the legal holder, the lien and security of the trust deed should as to such bond or bonds "be postponed and subordinated and made subject to its lien and security in favor of all the other bonds outstanding and unpaid, and the interest thereon." Thus it appears by these provisions of the guaranty and the trust deed that these defendants expressly agreed that they should not be released from the obligation of their guaranty by any extension of time of payment agreed upon by the Trading Company and the holder of the bonds, although that extension would subordinate the bonds as to the mortgaged security to the other bonds secured thereby, nor by any dealing by the holder with the Trading Company, except by way of cash payment, and that they unconditionally guaranteed the payment of the bonds.

The rule that a contract of guaranty should be strictly construed, and that it should not be extended by interpretation beyond its express terms, is invoked, and the defendants insist that the transaction by which these bonds were subordinated was not an extension of time of payment agreed upon by the Trading Company and the holder of the bonds, and was not a dealing by the holder of the bonds with the Trading Company, and that therefore this subordination falls under the general rule that a material modification of the contract guaranteed without the knowledge or consent of the guarantors releases them. But R. C. Kittel was the vice president and the active executive officer of the Trading Company. These bonds fell due on February 1, 1915—the day of the transaction. As such officer of the Trading Company, he must have been anxious to avoid a suit which might follow a default, unless the bonds were in the hands of a friend of the company. It was to the interest of that company that they should be placed in such hands. Peabody-Houghteling & Co. made it a condition of the transfer that these bonds should be subordinated. The vice president and the active executive of the Trading Company was present and participated in the entire transaction, and knew, as did his company, that this subordination was a condition of the trade, and that it was made. While the name of the corporation was not used in the writings which effected this result, there can be little doubt that it was for the benefit of the corporation, in its interest, and pursuant to the exertions of its active officer that the transaction was had. The court below was of the opinion that, in view of the unconditional guaranty and the express provisions thereof that no agreed extension or dealing between the holder and the Trading Company, except by way of cash payment, should release the guarantors, they must be held to have excluded themselves from a release on account of this subordination of the bonds, and this court is not persuaded that there was any error in that conclusion.

Finally, it is suggested that the court erred in refusing to receive evidence that when the guaranty was made R. C. Kittel agreed with the defendants that he would pay the bonds and keep the holder of them harmless on account of their guaranty. There was, however, no evidence, and there was no offer to prove, that the bank had any notice

of this agreement when it paid the $10,000 for the bonds and they were delivered to it to secure the payment of Kittel's draft. The evidence offered was therefore immaterial, and rightly rejected. The bank was a bona fide purchaser of the bonds for value, before their maturity, without notice of any defense of the guarantors, and the judgment in its favor must be affirmed.

It is so ordered.