## LOWISH v. FIRST NAT. BANK OF MARIETTA, OHIO.

Circuit Court of Appeals, Sixth Circuit.
March 15, 1929.

No. 5113.

Thomas H. Fittz, of Indianapolis, Ind. (Williams, Sinks & Williams and. B. W. Gearheart, all of Columbus, Ohio, on the brief), for appellant.

Thomas J. Summers, of Marietta, Ohio, for appellee.

Before HICKS, HICKENLOOPER, and KNAPPEN, Circuit Judges.

HICKS, Circuit Judge. Plaintiff claims to have bought from defendant, the payee, a certain note for $10,000, dated July 23, 1923, due in 60 days executed by the Joan Collieries Company and indorsed by Benjamin E. Jones and E. H. Wigginton. Plaintiff seeks to compel defendant, by virtue of section 9089w1 of Burns' Annotated Statutes of Indiana 1914 (section 49 of the Negotiable Instruments Act), to indorse the note, and further seeks a decree for the amount of it.

Said section, so far as it is material, is as follows: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferer."

■ Defendant admitted its ownership of the note but denied that it sold it to plaintiff. It insists that plaintiff made a payment on the note and nothing more. The controversy is reduced, therefore, to a question of fact; that is, what was the intention of the parties, and particularly what was the intention of the defendant, the holder of the note? Wood v. Guarantee Trust & Safe-Deposit Co., 128 U. S. 416, 424, 9 S. Ct. 131, 32 L. Ed. 472, 474; Purnell v. Gillespie, 126 Miss. 60, 64, 88 So. 637; Stark v. Scherf (Mo. App.) 207 S. W. 863; Citizens' Trust Co. v. Ward, 195 Mo. App. 223, 190 S. W. 364, 366; Binford v. Adams, 104 Ind. 41, 3 N. E. 753; Lancey v. Clark, 64 N. Y. 209, 21 Am. Rep. 604; Riddle v. Russell et al., 117 Iowa, 533, 91 N. W. 810; Kennedy v. Chapin et al., 67 Md. 454, 10 A. 243; Cason v. Heath, 86 Ga. 438, 12 S. E. 678; Lee et al. v. Field, 9 N. M. 435, 54 P. 873; Miller v. Del Rio Min. & Mill. Co., 25 Idaho, 83, 136 P. 448; Brown v. Marmaduke, 248 Pa. 252, 93 A. 1022; Hunter v. Matt Stewart Co., 141 Tenn. 512,

513, 213 S. W. 918; Central Trust Co. of New York v. Cincinnati, J. & M. R. Co. (C. C.) 58 F. 500, 505; Hirsch v. People's Bank, 240 F. 661, 664 (C. C. A. 5).

■ Assuming, without deciding, that plaintiff's possession of the note makes out a prima facie case of purchase, it remains to be determined whether this presumption in his favor has been overturned by the probative force of all the other evidence in the case. We think it has. The facts are in narrow compass and are substantially undisputed:

The maker of this note, to wit, the Joan Collieries Company, was a corporation. Its stockholders were divided into two factions. Upon one side were Ben Jones, president, E. H. Wigginton, treasurer, John Jones, and one Noll, and upon the other were George Rowland, general manager, David Rowland, and Rawland Rowland. To settle their differences, the Jones-Wigginton faction agreed to retire completely. George Rowland undertook a reorganization of the company under the style of the "Joan Coal Mining Company." He interested the plaintiff, Lowish. Wigginton and Jones each agreed to and did pay defendant $1,250 on the $10,000 note. It was agreed that the Joan Collieries Company, by its president, Ben Jones, would draw on plaintiff through the National City Bank at Indianapolis for $7,-500.00, payable to defendant for the balance of said note, and that the note and all the stock certificates of the Wigginton-Jones faction should accompany the draft.

In furtherance of this agreement George Rowland on November 1, 1923, both by letter and telegram, requested Wigginton to have defendant bank draw on plaintiff at the National City Bank, Indianapolis, for the balance of $7,500 attaching the note and the stock certificates of the Wigginton-Jones faction, and in compliance with these instructions, on November 2, Wigginton wrote defendant as follows:

"On note of $10,000.00 due your bank from Joan Collieries Company, secure payment as follows: Send note with draft against M. E. Lowish, draw through National City Bank, Indianapolis, surrendering paid note upon payment by Lowish of $7,500; balance of $2,500 will be paid direct to you by Ben Jones and myself."

It was agreed between George Rowland, promoter of the new company, and plaintiff, that plaintiff should take up this draft and the note, pending the organization of the new company, and that he should then be paid by the execution and delivery to him of the first mortgage bonds of the new company. Lo-

wish testified in answer to a question from the court:

"Q. This represents the payment of $7,500 by you at the request and in behalf of and for the Rowlands? You had no interest, direct interest, in this transaction; you simply advanced that money, so that the Rowlands might close up their affairs with the other directors of that company? A. Yes; and I was to hold everything as collateral until they did fix it up."

It was also agreed between the Wigginton-Jones faction and the Rowlands that Wigginton should forward by express, and he in fact did, on November 6, 1923, forward by express, to plaintiff at Indianapolis, all the tangible property of the Joan Collieries Company, to wit, its records, seal, orders, bills of lading, check book, bank verifications, canceled checks, bills of sale, abstracts, deeds, corporate papers, record books, stock certificate books, insurance policies, original entry books, ledger, and certain personal notes of David and George Rowland and this property was received from the express company and retained by plaintiff. The draft signed by the Collieries Company, by Benj. E. Jones, president, accompanied by the note, was, pursuant to the request of Wigginton, forwarded to the National City Bank of Indianapolis by defendant bank on November 3, 1923, with a letter of transmission and a slip, with instructions to telegraph in case of nonpayment.

Mary Morganthal, plaintiff's witness, made a record of the item on the collection register of the bank, called plaintiff's office, notified him that the bank had a draft on him and plaintiff came to the bank and paid it, and the draft, the note and the instruction slip, with the note underneath, the draft next and the instructions on top of the draft, all attached, were delivered to plaintiff. The weight of the evidence is that the stock certificates of the Wigginton-Jones faction likewise accompanied this note and draft, and were received by plaintiff, although this is denied by him; but he did in fact receive these stock certificates, whether they came to him through the bank or in the express package. The transmission letter of defendant bank to the National City Bank, accompanying the note and draft, was in the usual form, to wit, "We inclose for collection and credit the following items," and contained instructions as follows: "Allow examination and del. only on payment of papers attached."

The reorganization scheme was never carried out; at least, plaintiff never acquired the first mortgage bonds promised him by Rowland, and after waiting until March 4, 1926, or two years and three months, plaintiff brought this suit.

We conclude from this testimony that neither Wigginton nor Jones, either for themselves or the Collieries Company, ever intended that this $10,000 note should continue in the hands of Lowish as an existing obligation against either the company or themselves. They sought to have the note paid and to have themselves relieved as indorsers thereon. We further conclude that George Rowland never intended that plaintiff hold the note as an obligation against the defendant. His purpose was not only to relieve Jones and Wigginton, but to reorganize the company altogether under a new name and issue first mortgage bonds, which was impossible with the $10,000 note outstanding; that plaintiff never intended to buy this note as an investment, for he knew that the Collieries Company was disposing of its assets in the process of liquidation; that what he did intend, as he testified, was to advance the money to the aid of the Rowlands until such time as it could be returned to him in first mortgage bonds of the new company. Finally (which is of vital importance), there is nothing in the record to indicate that the defendant bank intended or desired to sell this note to plaintiff. Its sole connection with the transaction was to respond to the request of Wigginton by sending the Collieries Company's draft, accompanied by the note, for collection to the National City Bank, the note to be delivered as requested upon payment of the draft. The National City Bank was simply the agent of the defendant to carry out its instructions. Neither it nor the defendant had any negotiations with plaintiff touching a sale of this note.

This disposes of all the assignments of error, except the third, which is to the effect that the court erred in dismissing plaintiff's bill without giving plaintiff an opportunity to offer further evidence. During the progress of the trial, and after plaintiff had rested his case, and before defendant had concluded its evidence, the court directed the plaintiff to take the witness stand and thereupon the court examined the plaintiff at some length, and, evidently concluding that the plaintiff could not succeed in any event, dismissed the bill, to which plaintiff excepted, because he was denied the opportunity of offering evidence in rebuttal. This exception and the assignment based thereon lacks force, in that there is nothing in the record indicating just what, if any, material rebuttal evi-

dence would have been available, if the court had reopened the case.

Upon the whole, the decree dismissing the bill is affirmed, with costs.