BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1925.

FRANK H. KILKENNY, APPELLANT, v. LILLIE MAY KILKENNY, RESPONDENT.*

St. Louis Court of Appeals. Opinion filed January 5, 1926.

1.—Bills and Notes—Payment of Note after Maturity by Stranger—Payment or Purchase: Intention. Where a bill or a note is paid after its maturity by a stranger to the paper, it will in general be held to be a purchase and not a payment of the instrument; however, whether it is a payment ·or a purchase is a question of intention to be determined as a fact from the acts and declarations of the parties and from the surrounding circumstances.

2.—Same—Same—Same—Action to Cancel Release of Deed of Trust—Equity—Evidence—Appellate Practice. In an action in equity to cancel and set aside the satisfaction and release of a deed of trust and to subrogate the plaintiff to all the rights of the owner of the note and deed of trust before the release was made, whether the payment of the note after its maturity by the plaintiff, a stranger to the paper, was a purchase or a payment must, on appeal, be determined by the appellate court for itself, from all the facts and circumstances in evidence.

3.—Same—Same—Same—Presumptions. Where a note is paid after its maturity by a stranger to the paper, the presumption is that it was a purchase and not a payment, because, absent evidence of voluntary payment, it is presumed to be a purchase.

4.—Mortgages And Deeds of Trust—Father Paying Son's Note—Evidence—Purchase Instead of Payment—Subrogation. In an action in equity to cancel and set aside the satisfaction and release of a deed of trust and to sub-

(535)

rogate the plaintiff to all the rights of the owner of the note and deed of trust before the release was made, evidence reviewed and **held** to show that a father paying the note of his son was a purchaser and entitled to the security of the deed of trust securing the note and did not voluntarily pay it as a gift to the son, though he made the check payable to the son instead of the owner of the note or bank holding it and the deed of trust was released of record.

Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 728, n. 46; Bills and Notes, 8CJ, p. 588, n. 83; Mortgages, 41CJ, p. 795, n. 3.

Appeal from the Circuit Court of Lewis County.—Hon. James A. Cooley, Judge.

REVERSED AND REMANDED (*with directions*).

*Hilbert & Henderson* and *H. S. Rouse,* for appellant.

(1)   The court erred in dismissing plaintiff's bill, because defendant although duly served with summons more than thirty days before the first day of the March term, 1924, of the court, defaulted and failed to file an answer to the third count of plaintiff's bill, Sec. 1184, R. S. 1919.   (2)   The court erred in failing to award judgment to plaintiff, because plaintiff was a stranger to said note and when he, with his own money, took up said note, the legal presumption is that it was a purchase and not a payment.   Campbell v. Allen, 38 Mo. App. 27; Marshall v. Meyers, 96 Mo. App. 647; Belle Telephone Co. v. Estate of T. J. Hamil, 153 Mo. App. 406; Allen v. Dermott, 80 Mo. 56; Prather v. Hairgrove, 214 Mo. 161; Cantrell v. Davidson, 180 Mo. App. 420; Wing v. Insurance Co., 181 Mo. App. 390; Lipscomb v. Talbot, 243 Mo. 34.   It is only when a person is primarily bound by contract to pay a note that his payment of it works an extinguishment and satisfaction of the obligation, and then only as to those to whom he is bound.   Allen v. Dermoot, 80 Mo. 59.   It was not necessary that Cleopatria F. Waggoner, the holder, understand or know that plaintiff was purchasing said note.   Prather v. Hairgrove, 214 Mo. 142.   It was not necessary that said note have a written indorsement thereon.   Cantrell v. Davidson, 180 Mo. App. 418; Sec. 835, R. S. 1919.   The mortgage was an incident of the note and followed it.   Lipscomb v. Talbot, 243 Mo. 31.   (3)   The acknowledgment of satisfaction of the deed of trust possessed no more sanctity, nor conclusive force than a receipt for the money, which is always, both at law and equity, open to explanation.   And it is competent to show by parol that such acknowledgment of satisfaction was

made through a mistake. Christy v. Scott, 31 Mo. App. 337. (4) When plaintiff furnished the money to pay off the mortgage James Kilkenny was bound to pay, and at the request of said James, he was not a volunteer, and was entitled to be subrogated under the deed of trust so paid off and released. Capen v. Garrison, 193 Mo. 343; Implement Co. v. Jones, 143 Mo. 280; Brown v. Bank, 66 Mo. App. 431; Johnson v. Goldsby, 32 Mo. App. 564; Wolff v. Walter et al., 56 Mo. 295; Norton v. Highleyman, 88 Mo. 624. (5) A suit in equity is the proper procedure to set aside the satisfaction and cancellation of a deed of trust. Sweet v. Leffel et al., 215 S. W. 908; Kessler v. Stevens et al., 225 S. W. 937. (6) Charity Kilkenny, the wife of plaintiff and the mother of James F. Kilkenny, deceased, was a competent witness. Laws of Mo. 1921, page 392. (7) Plaintiff, Frank H. Kilkenny, was a competent witness to such facts as he testified to. Relative as to what will disqualify a witness when one of the parties to the contract is dead, the court referred to the case of Elsea v. Smith, 273 Mo. 396, 202 S. W. 1071.

*Frank & Stewart,* for respondent.

(1) There is no merit in appellant's first point that there was no answer filed to the third count of the petition. It is too late to raise this point after verdict. "Besides, though an answer should not be actually on file, the case after trial had will be treated as though it were. Henslee v. Cannefac, 49 Mo. 295." Potato Growers v. Produce Co., 193 Mo. App. 659. To the same effect. Bird v. Fox, 193 S. W. 941; Wells v. Electric Co., 108 Mo. App. 607; National Stamping and Electric Works v. Wicks, 144 Mo. App. 249. (2) Appellant's second point that when he took up the note with his own money, the presumption is that it was a purchase of the note and not a payment is not tenable for two reasons: (1) Because the record shows that he did not pay any money on this note. (2) There is no room for a presumption in the face of facts. While it is true that appellant now says that he expected the note to be turned over to him, and did not know that it had been cancelled, respondent is not bound by his statement. The bank cashier and the recorder both testify that he said at the time that he wanted the note cancelled and the mortgage released; that he stood by and saw it done, and after it was done, again asked if it was released. This raised an issue of fact, with the preponderance of the evidence against appellant. The court decided this issue of fact against appellant. In the face of such facts, the courts say there is no room for a presumption. "Presumptions have no application where facts are disclosed." Brannock v. Jaynes, 197 Mo. App. 150; Vallery v. Material Co., 211 S. W. 95.

(3)   The doctrine of subrogation asserted by appellant under point 3 of his brief is not supported by the facts in the record.   Even though a stranger pays a mortgage debt at the request of. the debtor, he is not entitled to subrogation unless there was an agreement at the time he made the payment that the security should be kept alive for his benefit.   Jacobs and Feller v. Webster, 199 Mo. App. 607-608.

NIPPER, J.—This is an action in equity to cancel and set aside the satisfaction and release of a deed of trust, and to subrogate the plaintiff to all the rights of the owner of the note and deed of trust before the release was made.   The suit originated as a result of the following events:

Plaintiff is the father of James F. Kilkenny, who died in November, 1923, leaving an insolvent estate.   The defendant is the widow of James F. Kilkenny, deceased.   In March, 1912, James F. Kilkenny purchased a farm, taking title to himself and his wife, creating an estate by the entirety.   At the time of this purchase, James F. Kilkenny, whom we will hereafter refer to as James, borrowed $1100 from his father, and gave his note therefor.   This money was paid as a part of the purchase price of the farm.   James, and his wife—who is the defendant here, borrowed $5300 from a Mrs. Powell, and gave Mrs. Powell a note for the last-named amount, bearing five per cent. interest, and due five years after date.   A deed of trust was also given on the farm in question.   The evidence discloses that some time in the early part of the year 1922, James went to his father, who is the plaintiff in this case, and requested him to take up this note and deed of trust held against his farm by Mrs. Powell, saying he would rather his father would hold the indebtedness against his farm than Mrs. Powell.   These facts were shown by the testimony of plaintiff's wife, who is the mother of deceased.   According to her testimony, she asked James if he could secure his father if he did that.   James replied that he could.   During the month of March, 1923, plaintiff went with James to the Bank of Monticello, which bank held the original note and deed of trust belonging to Mrs. Powell.   James then informed the cashier, Mr. West, that he wanted to pay Mrs. Powell's loan.   The cashier called Mrs. Powell over the telephone and obtained permission from her to accept payment for the note and to release the deed of trust.   At that time plaintiff gave his son his check for $5100, drawn on another bank.   The total amount of the indebtedness at that time, including interest, was $5119.30.   James paid the balance of $19.30 with his personal check, making a total of $5119.30.   This money was then placed to the credit of Mrs. Powell.   The cashier of the bank, Mr. West, then took the note, and in company with plaintiff and his son, James, went to the recorder's office to have the deed of trust released.   From the cash-

ier's testimony it appears that plaintiff said he did not want a new note, but wanted the note then held by West released from the record. Upon reaching the recorder's office, the recorder was informed of what was desired, and the deed of trust was released of record. Plaintiff says he did not know that the deed of trust was released until after his son's death. His testimony was that he told the recorder that he wanted the lease transferred to him, and that the recorder told him he knew what he wanted; but the recorder testified that he did not remember any such statement being made by plaintiff. Plaintiff also stated that he did not notice the recorder releasing the deed of trust on the margin of the record, and that if he had watched him he would not have known what he was doing. Plaintiff took the note and deed of trust home with him and placed them in a box where he kept his private papers.

It appears, also, that in March, 1923, about one year after this transaction, James went to his father's home and paid the interest on this note, amounting to $255, with his personal check. This payment was made to plaintiff about one year after the release was entered of record. This interest payment was endorsed on the note, and this endorsement, according to the testimony of plaintiff's wife, was made in the handwriting of James.

It appears from the testimony of the recorder and the cashier of the bank that plaintiff was particularly anxious to know if the deed of trust was released at the time he and James visited the recorder's office. There is evidence in the record that, as to the $1100 note, plaintiff told defendant, after the death of James, that if she would pay the funeral expenses and certain other indebtedness of deceased, he would not present the claim against the estate. There is no contention made in this case that defendant should pay the $1100, and therefore it goes out of the case.

Upon a trial the court rendered judgment for defendant, and plaintiff has appealed.

The contention of the parties to this controversy may be stated as follows:

The respondent contends that, even though plaintiff was a stranger to the note, he paid the same at the request of the maker, and there was no agreement that the security of the note should be kept alive for his benefit; that the payment was voluntary, and, therefore, he is not entitled to the benefit of subrogation, but that on the other hand the debt was wholly extinguished.

It is appellant's contention that, as plaintiff paid off the note with his own money, at the request of his son, took up the note, kept it in his possession, and the son afterwards paid interest thereon, it should be held to be a purchase and not a payment.

The rule as to when a transaction of this kind is a purchase and when a payment has been considered several times in this State. In 8 C. J., pages 588 and 589, the rule is thus stated:

"If a bill or a note is paid after its maturity by a stranger to the paper, it will in general be held to be a purchase and not a payment of the instrument. Whether it is a payment or a purchase is, however, a question of intention to be determined as a fact from the acts and declarations of the parties and from the surrounding circumstances."

In Missouri, a number of cases were collated and discussed in Prather v. Hairgrove, 214 Mo. 142, 112 S. W. 552, where the above rule was substantially followed. This being an action in equity, we must examine the evidence for ourselves, and determine from all the facts and circumstances in evidence whether or not the transaction taking place at the time the Powell note was paid is to be held as a voluntary payment by the plaintiff, or whether or not it was his intention to purchase the note and make his son liable to him.

The respondent contends that there is no room for any presumption in this case, because the facts appear and show conclusively that this was a voluntary payment on the part of plaintiff.

In considering this question in the first instance we must start with the presumption that this was a purchase and not a payment, because, absent evidence of voluntary payment, it is presumed to be a purchase. If that presumption is destroyed, of course, we must necessarily find that it was a voluntary payment. Starting with this presumption of purchase, we have evidence, and that uncontradicted, that James went to his father before the note was paid and asked him to take it up, stating that he would rather he (the plaintiff) would hold the indebtedness against his farm than the stranger, Mrs. Powell. This statement is evidently true, because all the acts following bear out the correctness of this testimony. It is also uncontradicted that, a year after the note was paid, James went to his father's house and paid the interest thereon. It is further clearly established by the evidence that, after the note was paid, the plaintiff, and not James, took the note and deed of trust home with him and placed these papers in his private box kept for such purposes, and there they remained until suit was brought. It is true that the note was not assigned to plaintiff, yet he paid it. The fact that he gave his son the check, instead of making it payable to the owner of the note or to the bank, did not change the transaction. It was unquestionably plaintiff's money that paid the note, and when plaintiff paid the note and took the same home with him, together with the deed of trust, he was then, under the facts disclosed by this record, the owner to all intents and purposes. [Campbell v. Allen, 38 Mo. App. 27.] Even though the mortgage was released of record, plain-

tiff testified that he did not know such was being done, and that if he had stood by and watched the transaction he would not have known what the recorder was doing at the time. In arriving at the true intent of the parties, which we should do in a case of this kind, it is not in accord with reason to assume that plaintiff, being a man, no doubt, of moderate means, would be so generous as to make this transaction a mere gift to his son, when all the facts and circumstances are against any such assumption.

We think the learned trial court erred in rendering judgment for defendant. The judgment is, accordingly, reversed, and the cause remanded, with directions to enter judgment for plaintiff, granting him the relief prayed for in the petition. *Daues, P. J.*, and *Becker, J.*, concur.