**CHICHESTER CHEMICAL CO. et al. v. UNITED STATES.**

**No. 5016.**

Court of Appeals of District of Columbia.

Argued March 3, 1931.

Decided April 6, 1931.

C. H. Merillat and P. H. Marshall, both of Washington, D. C., for appellants.

L. A. Rover, of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a libel filed by the United States August 20, 1920, to condemn certain drugs, known as "Chi-ches-ters, Diamond Brand, New Style Pills," as misbranded, in violation of the Food and Drugs Act. There was a trial to a jury in the court below, and a verdict and judgment in favor of the government. An amended libel was filed November 28, 1921, which charged that the drug was misbranded, in that the booklet placed in each package of pills contained statements which were false and fraudulent within the intent and purpose of section 8, paragraph 3, of the act. Act of June 30, 1906, c. 3915, § 8, 34 Stats. 771, as amended by Act of Aug. 23, 1912, c. 352, 37 Stats. 416, 21 USCA

§ 10. The statements which the libel charges were false and fraudulent are as follows:

" 'Relief for Ladies. * * * Worth proved * * * Reliable. Effective * * * a standard, reliable remedy for functional derangements of the female organism. * * * a standard and reliable remedy· * * * for Amenorrhoea (Suppression of the menses, due to colds, ill-health and other morbid causes). * * * For Dysmenorrhoea (Painful or scanty menstruation). The intensity of suffering varies. In some, the pain is moderate, continuing only a few hours, or it may be agonizing as to cause fainting, and undermine the patient's health. In all such cases, we earnestly recommend that a regular course of treatment with Chi-ches-ters Diamond Brand Pills be taken at each period for three or four months, when our remedy will be found to give lasting benefit and genuine relief * * * To prevent difficult, painful, over-profuse and other morbid menstrual conditions, and to keep this important function normal, take one pill three times daily for a few days before· the expected· re-appearance of the menstrual flow.. Our Diamond Brand Pills can confidently be depended·upon * * * 'Worth any money to suffering females. * * * No lady should think of being without this valuable remedy, and avoid long suffering. * * * Can not be surpassed * * * For .severe pain they can not be surpassed for relief given * * * they are truly wonderful. * * * ,"

Section 8 of the Drugs Act, as amended (21 USCA § 10), provides: For the purposes of this act, an article shall also "be deemed to be misbranded; In case of drugs: * * * If its package or label shall bear or contain any statement, design; or device regarding the curative or therapeutic effect of such article or any of the ingredients or substances contained therein, which is false and fraudulent."

The assignments of error on this appeal relate, first, to the refusal of the trial court to permit to be read in evidence letters of instruction and directions from appellant to his attorney, written between the years 1908 and 1920, and a certain other letter from appellant to Drug Inspector Kathe, the purpose in offering the letters being to show appellant's good faith in the preparation of its advertising literature; second, the admission in evidence by the court, over the objection of the company, of a certified copy of a record of the Department of Agriculture containing an alleged formula, or list of ingredients entering into the composition of

the pills; third, that the court erred in so broadening the inquiry before the jury as to permit the ·government to show that the pills were useless in cases of menstrual trouble caused by cancer, tuberculosis, and other diseases, notwithstanding a fair construction of the language used in the pamphlet confined its claims to value as a cure for amenorrhoea due to colds, anemia, and other like causes; and, finally, that the court erred in submitting the case to the jury at all because the evidence failed to show intentional fraud.

The pills were first put on the market in 1881, and were manufactured for the then owner of the formula by Parke, Davis & Co. Since 1915 they have been manufactured by Arner & Co., who are said to be the largest manufacturing chemists in the United States. The challenged literature was changed from time to time, but had been used as it was when suit was brought for several years. The pills are said to contain four ingredients, namely, two grains of extract of cotton root bark, one-fourth grain of extract of hellebore, one-half grain of iron sulphate, one-half grain of aloes.

Since, after careful consideration, we have reached the conclusion that the court erred in rejecting the letters from appellant which were offered in evidence, we shall discuss the other assignments only as they relate to the first.

The rejected correspondence between ·Chidester, who then owned the formula, and his counsel began in February, 1908—twelve years before the institution of the suit in this case. The first letter in the correspondence directed counsel to deliver to the head of the Bureau in Washington copies of the decisions in three federal cases involving infringements in which the Chichester Company had been successful, and directed him to go over these decisions with the law officers of the government. The letter also noted an inclosure of advertising matter which had been revised by counsel, and requested that counsel would confer with the Department and obtain its directions so that all necessary changes in its printed matter could be made. Another letter was dated in 1915, in which attention was called to the fact that new booklets were being gotten out, and requesting that these be gone over carefully to "see whether there is anything in any of it that might for any reason be regarded as 'repugnant' to the federal or state officials within whose purview such matters come," and instructing counsel to "go over

it again and strike out or change or modify any part of it that in your best judgment might be open to criticism." And again in the latter part of 1915 a letter to the effect that "in view of increasing strictness of the censorship of all such matter in connection with proprietary or patent medicines it may be well for us to have you go over them again and eliminate anything and everything that in your judgment might be in any way repugnant to the powers that be." And still again in 1916, instructions that you "again scan carefully to see if anything should be taken out or added to in order to make sure that nothing in either piece will conflict with any existing laws, regulations, or decisions"; and, at a later date in the same year, "we are very glad * * * that it will not be necessary * * * to throw away the printed matter which we had gotten out." And in 1917, the excluded letter to the government inspector, after noting the inclosure of advertising matter, labels, etc., stated: "If there is anything further you would like from us in regard to our business or any of our preparations, please let us know and we shall be glad to furnish it."

It is quite true that the court permitted the letters of counsel in response to the excluded letters to be introduced in evidence, but the admission of the latter gave only half of the picture, and tended to confuse, rather than to explain, the issue, which was, as we shall see, whether appellant was guilty of fraudulent intent in the advertisement and sale of its drugs.

▮ We think the fact that the obligation imposed by the act on the government involved proof of actual intent to deceive— an intent which may be derived from the facts and circumstances, but which must be established, Seven Cases v. U. S., 239 U. S. at page 517, 36 S. Ct. 190, 60 L. Ed. 411, L. R. A. 1916D, 164—takes the question of the admissibility of the letters out of the established rule that the statements of a party, oral or written, which are self-serving, are not admissible in his favor. In such circumstances, it is not unusual or improper to admit evidence of his declarations or acts fairly indicative of the existence of the mental state in which he did a particular thing. "Whenever the intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party." Connecticut Mut. Life Insurance Co. of Hartford, Connecticut, v. Hillmon, 145 U. S. 285, 295, 12 S. Ct. 909, 912, 36 L.

Ed. 706. See, also, Butler v. Watkins, 13 Wall. 456, at page 464, 20 L. Ed. 629.

If it be conceded, as apparently the trial court thought, that the test of the good faith of the advertising literature which the government declares is fraudulent, embraces the question whether the advertisement held out the pills as a "cure-all" for amenorrhea, obviously little, if any, evidence would have been necessary to prove the falsity of such a representation, for it may be assumed that the most ignorant person would know that no medicine which science had discovered is capable of relieving a disease, or sympton, whichever it may be called, produced sometimes by cancer, tuberculosis, pernicious anemia, lead poisoning, or induced by misplaced organs, or no organs, but, in the view we think may be taken of the fair import of the advertising language which the government points to as the head and front of the offending—namely, "a standard and reliable remedy for amenorrhea (suppression of the menses due to colds, ill-health, and other morbid causes)"—the language "other morbid causes," when read in connection with the preceding language, may fairly be construed to mean "other *like* causes," that is to say, other irregularities of the menstrual function of the same general nature as those particularly specified. " 'When an author makes use, first, of terms, each evidently confined and limited to a particular class of a known species of things, and then, after such specific enumeration, subjoins a term of very extensive signification, this term, however general and comprehensive in its possible import, yet, when thus used, embraces only things "ejusdem generis" '—that is, of the same kind or species—with those comprehended by the preceding limited and confined terms." 3 Words and Phrases, First Series, page 2328.

And, since the advertising matter does not guarantee a cure, but is held out only as a remedy, and since the evidence unquestionably shows that several of the ingredients contained in the drug are prescribed and used by reliable physicians and chemists in amenorrhea and dysmenorrhea resulting from trivial causes rather than organic diseases, and that the authors of well-recognized medical text-books agree that some, at least, of the ingredients forming the composition of the pills are useful in relieving such temporary menstrual disorders, the question of the good faith of the language used, as well as the significance which ordinarily would attach to it, was properly one for the jury.

In saying this, however, we do not wish to be understood as approving the challenged language of the booklet as it was. Enough, we think, is shown in the record to convince us that the remedy is at best confined to those causes which are in their nature ephemeral, and a broader claim than this may well subject it to the condemnatory provisions of the statute. But, notwithstanding this, it was important· in the protection of appellant's rights that its good faith in so advertising its drug should be tested by its motives and actions in the preparation thereof, and, in the absence of any suggestion or evidence of any kind that the rejected letters were written for the purpose of making a case, or in anticipation of a prosecution, or for any other purpose than an honest desire to obey the law, we think their rejection was error. "When the good faith or the intent of a party in a given affair is in issue, his acts and sayings in relation to it at about the time of the transaction generally constitute the best evidence of the fact, and are always competent." U. S. v. Gentry (C. C. A.) 119 F. at page 73.

In that view, we think it important that a manufacturer of patent drugs should, on the issue of his good faith, be permitted to show, if it is a fact, that he sought the advice of counsel, who in turn had consulted the proper officers of the government in an effort to bring his advertising matter within the terms of the law, and this appellant sought to do in his tender of the letters.

In these circumstances, the rejection of the letters was material, and makes it our duty to send the case back for a new trial, for it is only when it is certain that the error assigned could not have prejudiced the complaining party that the rule—that it is no ground for a reversal—is applicable. Choctaw, O. & G. R. Co. v. Holloway (C. C. A.) 114 F. 458, 465.

Reversed.