FEDERAL LAND BANK OF BALTIMORE *v.* G. W. NEELY *et als.* CARL T. AND MARY A. WIANT, *Appellants*

(No. 6915)

Submitted April 29, 1931. Decided May 5, 1931.
(Rehearing denied June 9, 1931.)

*J. J. Hendrick,* for appellants.
*J. D. Jones* and *B. W. Craddock,* for appellees.

HATCHER, JUDGE:

This appeal presents the single question, was the payment of a note by a stranger to it, a discharge or a purchase of the note?

Carl T. Wiant and wife, Mary, owned a tract of 120 acres, upon which they gave a mortgage in 1923 to secure the Federal Land Bank of Baltimore the payment of $1,000.00. On January 9, 1924, the Wiants conveyed the tract to Iva Miller, reserving one-half the oil and gas. As consideration for the conveyance, the vendee assumed the payment of the mortgage and executed to the Wiants four negotiable notes of $338.75 each, payable in 1, 2, 3 and 4 years from date, respectively. A vendor's lien was reserved to secure the payment of the consideration. Iva Miller conveyed her one-half interest in the oil and gas to Everett Miller on February 4, 1924, who on the same day conveyed the one-half interest to John E. and J. Erle Arbuckle. On August 9, 1924, Iva Miller conveyed all the 120 acres except the oil and gas to G. W. Neely, who assumed payment of the mortgage and the four purchase money notes given by her to the Wiants. About that time the Wiants assigned those notes to Willa A. Hardman, to whom Neely paid the first note when it became due. Mrs. Hardman was paid the amount due on the second note by J. W. Ross in August 1926, and that note is the one involved in this appeal. Some time later Ross took a judgment against the Wiants as endorsers of the note. Neely made no other payments, and this suit was brought in December, 1926, by the Land Bank to foreclose the mortgage on the 120 acres, etc. The suit was later converted into a creditors' suit, and the 120 acres were sold. After satisfying the mortgage and paying off the other two Iva Miller notes held by Mrs. Hardman, there remained $676.41 from the proceeds of the sale. Ross and the Wiants claimed that the Iva Miller note acquired by Ross from Mrs. Hardman should be paid out of this remainder. The circuit court rejected their claim and awarded the entire balance to John E. and J. Erle Arbuckle. The Wiants appeal.

There was no written assignment of the note by Mrs. Hardman, who testified that she was referred to the National Exchange Bank of Weston by Neely after the note became due, that she approached Mr. Ross as an official of his bank, and that he told her the banks "were taking care of Mr. Neely" and "were going to try to keep Mr. Neely on his feet."

Mr. Ross testified as follows: that he was cashier of the National Exchange Bank; that in August, 1926, Mrs. Hardman came to the bank and said suit would be brought against Neely on the note in question if it were not paid; that his bank and The Citizens Bank had, a short time before, taken a mortgage on the lands of Neely to secure debts owing to the two banks; that Mrs. Hardman informed him that the note was in the possession of the Kanawha Union Bank of Glenville; that he had the latter bank send the note to the National Exchange Bank, and that he personally gave his bank a check for the amount of the note; that his bank "as an institution" had no knowledge of the payment until some time after it was made; that Neely did not confer with him about the note prior to his connection with it, and did not know of that connection until long afterwards; that Mrs. Hardman told him there was a vendor's lien to secure the note and the note "was good"; and that, relying entirely on her statements as to the vendor's lien and wishing his bank's mortgage to remain not disturbed (by a suit against Neely at that time) he personally paid the note.

The circuit court took the view (in a written opinion), that the transaction between Ross and Mrs. Hardman amounted to a payment or discharge of the note, and therefore Ross did not acquire the security of the debt (the vendor's lien), citing Daniel on Neg. Inst., sec. 1222; *Neely* v. *Jones*, 16 W. Va. 625, and *Crumlish* v. *Imp. Co.*, 38 W. Va. 390, 395. The Negotiable Instrument Law has been passed since those decisions and supersedes them. Section 119 of that enactment provides: "A negotiable instrument is discharged (1) by payment in due course by or on behalf of the principal debtor." (Other means of discharge are stated but are not quoted as they have no relation to the facts under consideration.) Following the established rule of statutory construction, *expressio unius est exclusio alterius*, Whitley on Bills, etc., p. 275, comments on this section as follows: "In view of this section it would seem plain that it meant that the particular method prescribed for the accomplishment of that result should exclude a discharge by any other or different method." If all other and different methods of dis-

charge are excluded by section 119, then this question turns on whether Ross paid the money to Mrs. Hardman *on behalf* of Neely, (i. e., with the purpose of discharging Neely's liability); if so, the note was discharged, if not, the note was purchased. The presumption is against the payment as a discharge, and in favor of the payment as a purchase. See cases cited under Vol. 5, Uniform Laws Ann. (Neg. Inst.), sec. 119, p. 595; Bigelow, Bills, Notes, etc., (3rd Ed.), sec. 567; 8 C. J., subject, Bills and Notes, sec. 826. The presumption is confirmed (a) by the absence of kinship, business association or other reason why Ross should discharge the note on behalf of Neely; (b) by the uncontradicted evidence of Ross that his reason for securing the note was to preserve the position of his bank *in re* the Neely mortgage; and (c) by the fact that he never turned over the note to Neely but retained it as his own. See *Cantrell* v. *Davidson*, 180 Mo. App. 410, 420. The assurance of Mrs. Hardman that the note was amply protected by the vendor's lien led Ross to regard the note as a safe investment. If he thought that he could promote the interest of his bank without personal risk by acquiring the note, it was natural that he, as a loyal official, should do so. Consequently, the statement of Ross to Mrs. Hardman that the banks wanted to keep Neely on his feet is entirely consistent with the claim of Ross that he acquired the note in the interest of his bank. The fact that his action prevented the suit against Neely threatened by Mrs. Hardman and to that extent benefited Neely, was merely collateral to the conception of Ross that in preventing the suit he was serving his bank. Neither does the fact that he purchased the note after maturity and is not "a holder in due course" militate against him. The law recognizes the right to purchase past due paper, and does not subject the title of the purchaser to any defense except equities in favor of the maker or payee. 8 C. J., *supra*, sec. 697. Here, no such equities are advanced. We are, therefore, of opinion that Ross was a purchaser of the note, and as an incident to his purchase, acquired the right to enforce the vendor's lien.

The decree of the circuit court is accordingly reversed and the cause remanded.

*Reversed and remanded.*