BANK OF SUTTON *v.* OLEY SKIDMORE, *et al.*

(No. 7346)

Submitted October 25, 1932.   Decided November 1, 1932.

*E. G. Rider,* for appellant.
*John N. Charnock,* for appellee B. A. Wise & Co.
*Eakle & Eakle,* for appellee W. H. Eakle.
*Hines, Hall & Hines,* for appellees G. Stanley Hamric and others.

HATCHER, PRESIDENT:

This appeal involves the question of whether a note· was discharged or purchased by the Bank of Sutton.   The Bank

(plaintiff below and appellant) alleged a purchase, but the circuit court held a payment, and decreed that plaintiff take nothing.

By deed of April 1, 1925, A. Hamric, G. S. Hamric and Lot Carroll conveyed to W. H. Eakle a lot in the town of Sutton. The consideration was $1,000.00 cash and six notes of $1,000.00 each, payable at the Home National Bank of Sutton, in from one to six years from date, respectively, and secured by a vendor's lien. Eakle conveyed the lot to Oley Skidmore by deed of May 14, 1925, in which the grantee assumed the payment of the six notes above referred to. Skidmore paid the first three notes. The fourth note, due April 1, 1929, was endorsed in blank and sold by the payees to B. A. Wise & Company of Charleston, before maturity. The purchaser endorsed the note on March 20, 1929, and forwarded it through its local bank stamped "for collection" to the Bank of Sutton. On April 10th, the local bank received from the Bank of Sutton its cashier's check for $1,240.00 (in full of the note), accompanied by a form letter of advice captioned "Local Collection", which after describing the note contained the imprint "Bank of Sutton, Paid April 2, 1929, Sutton, W. Va." Shortly after this transaction, Wise & Company purchased the fifth and sixth notes of the series, which its manager deposed would not have been done had the fourth note not been paid.

The bill herein (1) alleged that the Bank of Sutton purchased the fourth note, and that payments thereon have been made by Skidmore, reducing it to $700.00; (2) invoked the benefit of the vendor's lien; and (3) sought to enforce collection of the alleged balance on the note by a sale of the lot. The note was exhibited with the bill. Skidmore did not answer. Eakle, Wise & Company, and G. S. Hamric et al., answered separately, denying the above allegations. No testimony was submitted by the plaintiff, the above statement of fact being taken from written exhibits and from oral evidence introduced by the defendants.

As holder of the note plaintiff was "deemed *prima facie* to be holder in due course," under section 59, Negotiable Instrument Law (hereinafter, for brevity, N. I. L.), Code 1923, chapter 98A. Plaintiff was entitled to rest its case upon exhibiting the note, as the denial in the answers of its title, was

not sufficient to overcome the statutory presumption of title accorded to it as holder. A plea denying the validity of the note itself will put a holder on proof, but a mere denial of the holder's title will not. *Bank v. Bank*, 99 W. Va. 544, 130 S. E. 142; *Holdsworth v. Drug Co.*, 118 Va. 359, 362, 87 S. E. 565; *Trust Co. v. Barry*, (Mass.) 157 N. E. 530.

It is contended that the negotiability of the note became suspended when it was endorsed restrictively ("for collection") and that it became non-negotiable (in a technical sense) when not paid at maturity (April 1st). Both contentions may be admitted without giving the defendants any coign of vantage. The law does not forbid the purchase of non-negotiable paper —it simply subjects the purchase to any defenses in favor of the payee or a prior holder. 8 C. J., subject Bills and Notes, secs. 67, 71, 577 and 1096. Bigelow on Bills, Notes, etc. (3rd Ed.), Sec. 483. No equity is advanced in favor of any defendant except Wise & Company, reference to which will be made later. It cannot be contended seriously that the words "for collection", *ex vi termini*, impair the plaintiff's right of recovery since, under section 48 N. I. L., it could have struck out the restrictive words at any time, even during trial. *Ensign v. Fogg*, 177 Mich. 317, 143 N. W. 82; *New Haven Mfg. Co. v. Pulp & Board Co.*, 76 Conn. 126, 55 Atl. 604, 606; *Waldock v. Winkler*, (Okla.) 152 Pac. 99, 100; *Bank v. Ficklin*, 185 Ill. App. 381; 30 A. L. R., Anno. 341, etc.; 8 C. J., *supra*, section 553. This was the law even prior to the statute. "The holder of a promissory note has a right to erase a prior special indorsement thereon. Nor is it incumbent on him to explain such erasure before the note is admissible in evidence." *Jones v. Berryhill*, (1868) 25 Iowa 289. See also *Jerman v. Edwards*, 29 App. D. C. 535, 537; *Vanarsdale v. Hax*, 107 Fed. 878, 880; Bigelow, *supra*, secs. 277 and 278.

In the furtherance of justice, we are warranted in regarding this transaction from the standpoint of common experience. *Wood v. Trust Co.*, 128 U. S. 416, 423. The money paid to Wise & Company by plaintiff, presumably represented either its own money or that of Eakle or Skidmore, who were the respective parties liable for the note. Eakle's answer makes no claim to and precludes the thought that he supplied that money or had the Bank pay it for him. *Citizens*

*Trust Co. v. Milling Co.,* (Mo.) 210 S. W. 774, stressed by counsel for Wise & Company, has no application here, because it was demonstrated there that a note sent by the payee to the bank for collection had been paid by the bank *from the maker's funds.* There is no such proof in this suit. Even if the bill should not be taken as confessed as to Skidmore (because of the denials in the answers), it is beyond belief that he would remain silent had he furnished or arranged for that payment. The defendants alleged that he had paid the note; but the plaintiff denied that allegation and no proof was taken thereon. The only reasonable inference is that the Bank paid its own money. Whether payment operates as a discharge of the instrument or as a purchase, depends on the payor's intention. Bigelow, *supra,* sec. 567. The payment of the Bank's own money on behalf of either Eakle or Skidmore would have been entirely gratuitious. Banks simply do not indulge intentionally in gratuities of that character. ''The presumption is against the payment as a discharge and in favor of the payment as a purchase.'' *Bank v. Neeley,* 110 W. Va. 433, 436, 158 S. E. 659, 660, (and authorities there cited). There is nothing in the record to overcome that presumption. ''The possession of a note uncancelled, by a person other than the maker, is prima facie evidence that the debt evidenced thereby is unpaid.'' 5 Uniform Laws Annotated (Neg. Inst.) 601. Therefore we must conclude that the Bank purchased the note for its own purpose.

Many cases are cited in the briefs of the several defendants which at first glance seem relevant but are not, because they were decided either before or without taking into consideration the N. I. L. The strongest citation is *Bank v. Craig,* 63 Ohio St. 374, 59 N. E. 102, 81 Am. St. Rep. 639, which held that payment by a bank from its own funds of a note endorsed for collection, if without the consent of the maker, extinguished the note. That case was decided in 1900, two years before Ohio adopted the N. I. L., is not in harmony with the provisions of the N. I. L., and therefore is not pertinent. What constitutes a discharge now is stated in sections 119 and 120, N. I. L. Other methods of discharge are excluded. Whitley on Bills, p. 275. This transaction does not come within the provisions of those two sections.

Despite the initial relation of the Bank as an agent of Wise & Company, it is recognized that the Bank had the right to convert that relation into one of ownership by satisfying Wise & Company. "If, notwithstanding a restrictive endorsement, advances are actually made to the depositor, the title passes." 7 C. J., subject Banks and Banking, sec. 249. Accord: *Bank v. Sonnenstrahl,* 249 N. Y. 391, 394, 164 N. E. 327; *Bank v. Blanton Co.,* (Mo.) 287 S. W. 839, 840-1; Morse, Banks and Banking, (6th Ed.) sec. 573; Brannon, Neg. Inst. Law (5th Ed.), pp. 330, etc.; Annotations 6 A. L. R. 259, 24 A. L. R. 902, and 60 A. L. R. 248. In *Bank v. Harden,* 83 W. Va. 119, 97 S. E. 600, it was held that "the mere crediting by a bank to a depositor's account of the proceeds of a note will not constitute the bank a holder in due course"; but in the opinion (p. 126) it was said: "Of course, the rule is different where something of actual value is parted with by the bank." The different rule is prescribed by section 26, N. I. L., as follows: "Where value has at any time been given for the instrument, the holder is deemed a holder for value," etc. This rule also antedates the N. I. L. Lord Ellenborough said in 1807, that when paper was left with a banker for collection, he became an agent, but "If the banker discount the bill or advance money upon the credit of it that alters the case; he then acquires the entire property in it, or has a lien on it *pro tanto* for his services." *Giles v. Perkins,* 9 East 12, 14. Accord: *Old Nat'l Bank v. Gibson,* 105 Wash. 578, 584, 179 P. 117. *Garrison v. Tr. Co.,* 111 A. S. R. 407, 102 N. W. 978, and like cases cited by defendants do not oppose this rule. Morse, *supra,* notes only one case to the contrary from a court after the N. I. L. had been adopted within its jurisdiction, i. e., *Bank v. Syer,* 113 Va. 53, 73 S. E. 438. That case was decided in 1912, and Virginia had adopted the N. I. L. in 1897; but the opinion took no consideration of the N. I. L. and was based on a federal case decided in 1890 (which was likewise inconsiderate of N. I. L.) and a Georgia case decided in 1895. 8 C. J. 46 lists Georgia as a state which has never adopted the N. I. L. Consequently *Bank v. Syer* is not persuasive.

Wise & Company contends that because of plaintiff's report that the fourth note was paid, it purchased the fifth and sixth notes, and plaintiff is estopped from claiming as against it

that the fourth note was purchased. Certain incomplete pronouncements of the law of estoppel support the contention. But estoppel does not arise merely because of action taken upon a misleading statement. In addition thereto (1) the statement must be made with the intention ''or at least with the expectation that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon''; and (2) the other party without fault himself ''must in fact act upon it in such manner as to change his position for the worse.'' Pomeroy Eq. Juris. (4th Ed.), sec. 805, pp. 1644-5; Accord, *Atkinson v. Plum,* 50 W. Va. 104; *Mullins v. Shrewsbury,* 60 W. Va. 694, 55 S. E. 736; *Kuhl v. The Mayor,* etc., 23 N. J. Eq. 84; 2 Herman, Estoppel, sec. 781, Bigelow, Estoppel (6th Ed.), pp. 684-5, 702; 21 C. J., subj. Estoppel, secs. 124, 136. There is no allegation or proof that the plaintiff expected or had reason to expect that Wise & Company would act on the assumption that Eakle or Skidmore had paid the fourth note; neither is it alleged nor proven that Wise & Company cannot collect the fifth and sixth notes in full or has in any manner *changed its position for the worse.* Consequently, Wise & Company do not make out a case of estoppel against plaintiff.

Under the prima facie case plaintiff was *a holder in due course;* under the proof it is *a holder for value,* and as such is entitled to enforce the collection of the balance due on the fourth note. The decree of the lower court is reversed and the cause remanded.

*Reversed and remanded.*