GENERAL ICE CREAM CORPORATION *vs.* PAULINE STERN.

Bristol.  March 26, 1935. — May 14, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Mortgage,* Of personal property: assignment, validity. *Bona Fide Purchaser. Evidence,* Relevancy, Extrinsic affecting writing.

An assignment of a chattel mortgage and delivery to the assignee, without indorsement, of an overdue promissory note secured by the mortgage transferred to the assignee merely an equitable interest in the note and mortgage which was subject to the equities between the mortgagor and mortgagee.

Where the giving of a bill of sale of a chattel and of a promissory note, secured by a mortgage of the chattel, by the purported purchaser to the purported seller constituted a "mere paper transaction" not intended to have any effect as between those parties, so that no debt arose between them, and subsequent to such transaction the purported seller gave another mortgage of the chattel to a third person for value, no mention of the earlier mortgage being made therein, that person's rights in the chattel were superior to those of one who had acquired an equitable interest in the earlier mortgage and note subject to the equities between the parties thereto.

In proceedings involving the rights of one who had an equitable interest in a mortgage of a chattel and the note secured thereby, subject to the equities between the mortgagor and mortgagee, as against the mortgagee in a subsequent mortgage of the same chattel, it was proper to admit in evidence an agreement between the parties to the earlier mortgage and note, made contemporaneously therewith and with a bill of sale of the chattel from the mortgagee to the mortgagor, and showing in substance that the transaction between those parties was a mere "paper" one and not intended to have any effect.

BILL IN EQUITY, filed in the Superior Court on June 8, 1934.

Proceedings in the suit are described in the opinion.  The decrees were entered by order of *O'Connell,* J.

The case was submitted on briefs.

*H. A. Lider,* for the defendant.

*S. Rosenberg,* for the plaintiff.

PIERCE, J.  This is a suit in equity to enjoin the foreclosure of a chattel mortgage of a soda fountain, and for

a decree that the defendant's claim thereon be cancelled and discharged. The case was referred to a master who heard the parties and made a report. The defendant objected "to the master's report because he admitted in evidence a written agreement dated January 19, 1932, over the objection of the" defendant. The judge entered an interlocutory decree overruling the objections and confirming the report, and a final decree ordering the cancellation and discharge of said mortgage. From said interlocutory and final decrees the defendant appealed to this court.

The master in substance found the following facts: Prior to January 19, 1932, one Albert C. Sheehan conducted a general variety store in New Bedford, under the name of "Sheehans." He desired to operate a drug store but was not a registered pharmacist. On said January 19, by a bill of sale, he conveyed all of his stock of goods and fixtures, including "the soda fountain," to one Charles F. Smith, who was a registered pharmacist. He took back a note for $5,000 payable on demand, with interest at six per cent per annum payable semiannually, which note was secured by a mortgage of the same property described in the bill of sale, and at the same time he took an agreement signed by Smith whereby it was agreed and understood that the object of the transaction was to use the name of Smith in order to obtain a license to run a registered drug store; that the goods and store actually belonged to Sheehan; that the moneys to be taken in should belong to Sheehan; that no money was to be paid out for goods except with the consent of Sheehan; and that Smith was to work for Sheehan as clerk. Sheehan "supposed and considered that the agreement from Smith to him was a bill of sale of the stock and fixtures back to him." After the arrangement with Smith goods were purchased in the name of "Depot Pharmacy" and also in the name of "Sheehans." After Smith went to work for Sheehan his license as a registered pharmacist was posted in the store until about December 24, 1933, when it was taken down and the sign "Depot Pharmacy" covered up. No

business certificate was filed in the office of the city clerk. The bill of sale, note, mortgage and agreement were drafted and executed in the office of an attorney at law. After their execution Sheehan took possession of them and, with the exception of the note and mortgage, kept them until the bringing of this suit. Smith was paid weekly wages by Sheehan.

The above are all the facts relating to the transaction between Smith and Sheehan set out in the record. The record does not disclose any delivery of the stock of goods or fixtures, including the "soda fountain," or any delivery of the bill of sale from Sheehan to Smith, and there is nothing in the record by way of evidence to impeach the finding of the master "that there was no delivery of the property," and no direct evidence and no finding by the master that the Smith-Sheehan mortgage was recorded in the city clerk's office.

On June 9, 1933, Sheehan borrowed $400 from one James E. McCarty, on a note secured by an assignment of the Smith mortgage and the delivery of the Smith note, which was not indorsed. At the time of the loan McCarty was intimate with Sheehan and had called at the store almost daily since 1927. He knew nothing about the agreement between Smith and Sheehan and was not told anything about the ownership of the store. Sheehan testified that sometime in November or December, 1933, he became the owner of the stock and fixtures. The evidence is consistent with the fact found that on December 24, 1933, Smith's certificate was taken down and the sign "Depot Pharmacy" covered up, but is not consistent with the finding that Sheehan "supposed and considered that the agreement from Smith to him was a bill of sale of the stock and fixtures back to him." Sheehan had no property other than "the equity in" said Smith-Sheehan mortgage, and McCarty, when he took the mortgage note, did not know of any defence to or defect in that note and acted in good faith. In consequence of an attempt to attach the goods of Sheehan in May, 1934, the defendant through her husband learned of the Smith-Sheehan mortgage note, and purchased it from McCarty

without knowledge of any defence to or defect in it or the mortgage.

On December 29, 1933, Sheehan gave a mortgage of the soda fountain to the plaintiff to secure $450 and other present and future indebtedness. No mention of any prior mortgage was set forth in the mortgage to the plaintiff. The assignment of a note secured by mortgage passes all the mortgagee's interest in the mortgaged property. The debt is the principal thing and the mortgage an incident only. If the debt is in the form of a negotiable promissory note, the assignee by indorsement takes the mortgage, as he takes the note, free from any equity which existed in favor of third persons while it was held by the mortgagee. If the note is not indorsed, as was the fact in the instant case, an equitable interest in it may be assigned but the assignee must abide by the case of the original mortgagee and take it as he would the mortgage, subject to the equity of the mortgagor. The fact that the note in the instant case was dated January 19, 1932, and assigned to McCarty on June 9, 1933, does not require a decision of the question whether, if the note had been indorsed when it was assigned, McCarty would or would not have been a holder in due course, because it was not indorsed.

It is to be noted that the assignment of the Smith note was not a partial assignment of that note and mortgage but was an assignment of the Smith note and mortgage; it was an assignment of the Smith-Sheehan mortgage to secure the payment of Sheehan's note of $400. See *French* v. *Haskins*, 9 Gray, 195. If the Smith demand note was overdue, McCarty obviously took it and the mortgage subject to all equities between Smith and Sheehan. It is plain that the Smith note and mortgage were not assignable if the note had been paid or otherwise discharged or if there had in fact never been any debt before the assignment. *Shrieves* v. *Morris*, 151 Mass. 310. *Abbott* v. *Upton*, 19 Pick. 434. In the instant case there was never any debt due from Smith to Sheehan arising from the sale of the goods and fixtures of Sheehan's store, including the soda fountain. The transaction between Smith and Shee-

han was a "mere paper transaction" not understood to have any effect between Smith and Sheehan. If such was the effect of the transaction McCarty, by assignment, acquired no rights which would stand against the rights of the plaintiff. *Shrieves* v. *Morris*, 151 Mass. 310. Of course, the defendant acquired no rights through the assignment to McCarty if the mortgage was not assignable. *Pearson* v. *Mulloney*, 289 Mass. 508, is distinguishable on its facts. It is plain the contemporaneous agreement between Smith and Sheehan was admissible to show the real consideration for the conveyance between Smith and Sheehan, and also as one of the surrounding circumstances to show the acts of the parties and their relation to each other. *Farnsworth* v. *Boardman*, 131 Mass. 115, 116–117. *Shrieves* v. *Morris*, 151 Mass. 310, 313.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*