## LEE v. MITCHAM et al.

### No. 7052.

United States Court of Appeals for the District of Columbia.

Argued March 14, 1938.

Decided May 16, 1938.

George C. Gertman, of Washington, D. C., for appellant.

Norman B. Frost, Frank H. Myers, and Frederic N. Towers, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

GRONER, C. J.

William E. Edmonston was for many years treasurer of The Washington City Orphan Asylum. In 1902 the asylum lent John D. Bartlett of Washington $6900 and secured the loan by a deed of trust on premises known as 923 Rhode Island Avenue, Northwest. In 1904 the asylum lent Bartlett an additional $1500 and secured this loan by a second deed of trust upon the same property. The $6900 loan was curtailed $900 by Bartlett on June 17, 1903, and interest was last paid by him upon the remaining balances November 29, 1906. Bartlett died intestate in 1915, and no administration was ever had upon his estate. Appellant, Blair Lee, is the surviving trustee under the deeds of trust referred to. Appellees are daughters of Bartlett, and one or more of them continued to live in the Rhode Island Avenue house for many years without any knowledge of the existence of the debt contracted by the father. At some date subsequent to the execution of the notes,—but exactly when does not appear,—the payee and holder, the asylum, deposited them with the Riggs National Bank of Washington, D. C., for collection. The indorsement was:

For Collection
Washington City Orphan Asylum
W. E. Edmonston, Treasurer.

The Riggs Bank continued to hold the notes until December, 1925. In that year Mr. Edmonston, then eighty years of age, determined to retire from business and to resign his position as treasurer of the asylum. On December 16, 1925, having drawn his personal check in favor of the Riggs Bank for $14,778, the principal amount of the notes and interest, Edmonston, in company with his secretary, went in a taxicab to Riggs National Bank, where the secretary presented the check, secured possession of the notes from the teller, and delivered them to Mr. Edmonston, who remained outside in the taxicab. The notes were delivered by the bank just as they had been received by it, without additional indorsement showing that they had been paid. Immediately upon returning to his office Mr. Edmonston made the following notation on the back of each instrument:

"The principal and unpaid interest to December 16, 1925, was paid to Riggs Na-

tional Bank by my certified check on Bank of Washington, to be credited to The Washington City Orphan Asylum in order to save it from loss and not to extinguish the note and the same is to be held by me as my property and transferred to me by said Asylum when the proper credit is made to it.

"W. E. Edmonston

"In consideration of the above payment this note is hereby transferred and assigned to William E. Edmonston subject to approval of trustees."

Nothing more was done by Edmonston with respect to the transfer of the notes. He gave them, so marked, to his secretary, and she placed them in a safe which was used for the asylum records. There they remained. Edmonston died in 1927. Qualification was had on his estate, and Edmonston's secretary showed the notes to his executors, but they took no action on them and the notes remained in the safe. In 1936 Bartlett's daughters (appellees) became interested in selling the property, and it was then that they discovered the unreleased deeds of trust. Investigation disclosed the notes, and appellees made demand of appellant, as surviving trustee, to release the trusts, contending that the notes had been paid and the debts evidenced by them discharged. Appellant refused to make the release because the notes were not cancelled and had not been paid either by Bartlett or by appellees. Thereupon this proceeding in equity was instituted under the statute (Title 25, sec. 204, D.C. Code 1929) to have appointed a substituted trustee who should execute the proper releases. The lower court, after hearing, signed findings of fact and conclusions of law. The conclusion in point is:

"In making the payment of $14,778.00 to the Riggs National Bank, Mr. Edmonston acted as a volunteer and acquired no rights against the plaintiffs by virtue of such payment. * * *"

On the basis of this conclusion the court discharged appellant as trustee and appointed a substitute trustee with directions to release the lien of the trusts.

■ Both sides agree that the question for decision here is whether Mr. Edmonston, in view of the facts shown above, purchased or paid the notes. In reaching an answer to this question we must be guided by these general propositions of law: First. —The transfer of possession of a negotiable instrument is presumably a transfer of title. And especially is this true when the transfer is made to one who is not a debtor or is under no obligation to receive or pay it. Ketchum v. Duncan, 96 U.S. 659, 662, 24 L.Ed. 868; Dodge v. Freedman's Savings & Trust Co., 93 U.S. 379, 385, 23 L.Ed. 920. Second.—While the presumption is as stated above, in the final analysis the question is determined by the intent of the parties, which is to be gathered from all the facts and circumstances. Briscol v. American S. Trust Co., 176 Ark. 401, 4 S.W.2d 912, 917; Stark v. Scherf, Mo.App., 207 S.W. 863; Kilkenny v. Kilkenny, 220 Mo.App. 535, 279 S.W. 184; Neer v. Neer, Mo.App.,1935, 80 S.W.2d 240; In re Gamble's Estate, 91 Neb. 199, 135 N.W. 558; Federal Land Bank of Baltimore v. Neely, 110 W.Va. 433, 158 S.E. 659; Hirsch v. People's Bank, 5 Cir., 240 F. 661, 665; Lowish v. First Nat. Bank, 6 Cir., 31 F.2d 408; Lile's Bigelow on Bills, Notes and Checks, 3rd Ed., § 567. In Baer v. Security Trust Co., 4 Cir., 1929, 32 F.2d 147, the rule is stated as follows (page 150):

"The relation of a stranger to commercial paper who puts up his money and acquires possession of the paper is one of intention. The transaction is presumptively a purchase and not a payment or discharge of the instrument."

■ We think it may be taken as settled that, where a stranger acquires a note from a holder authorized to sell, the transaction,—either upon proof of the stranger's intention to purchase or upon the presumption of fact that he intended a purchase, —will be held to be a purchase rather than a discharge of the note. As purchaser he would succeed to all the rights in the pledged security; and we think this is true notwithstanding the notes had passed their maturity date. General Ice Cream Corporation v. Stern, 291 Mass. 86, 195 N.E. 890; Federal Land Bank of Baltimore v. Neely, supra; Sapero v. Neiswender, 4 Cir., 23 F.2d 403; Peninsula Bank v. Wolcott, 4 Cir., 232 F. 68.

Appellees, as we understand their position, do not seriously question this general statement of the rule. Rather they take the position, 1st, that the notations made by Edmonston are no more than written hearsay and were, therefore, not admissible to show his intention in the transaction; 2nd, that even if they were admissible, the additional notation "assignment subject to approval of trustees", without

proof that the trustees consented to the assignment or that Edmonston ever sought to obtain their consent, negatives the idea of intention on his part to preserve the notes as evidences of an existing debt; 3rd, that regardless of the two last mentioned grounds, Edmonston acquired no title in the notes for the reason that the bank had no title to them and could pass none to him. The basis of this last contention is that the notes were all specifically indorsed "for collection", so that the bank had no authority to sell the notes but had authority only to collect them. We shall dispose of the three points in order.

First. Appellees say the notations made by Edmonston are inadmissible because they are self-serving in character, are nothing more than written hearsay, and were not made as a part of the res gestae. There is no substance to these contentions. We think there is no requirement that the notations should have been made as part of the "res gestae", in the sense in which appellees use the term. But in any event the testimony was that Edmonston, a man eighty years of age, went with his secretary in a taxicab to the bank, waited in the taxicab while she went in and delivered the check and received the notes, and immediately upon returning to his office wrote a statement on the notes to the effect that he had made the payment to save the asylum from loss but with the intention of preserving the debt intact. The time between his receiving the notes and his making the notations thereon was only so much time as was required to reach his office, when for the first time the opportunity was at hand to make the notations; and if the res gestae rule were involved, the evidence would be sufficient to bring this transaction within it. Nor is there substance in the point that the notations are self-serving, written hearsay. Evidence of Edmonston's intention was pertinent to the issue,—indeed it was the issue,—and the court was compelled to receive any competent evidence which would prove what that intention was. Dilenbeck v. Herrold, 183 Iowa 264, 164 N.W. 869. In nearly all such cases as this the courts have resorted to the declarations of the actors at the time of the transaction in order to determine the issue of intent, for there is frequently no other way of resolving the issue. If Edmonston, who died two years after the transaction, had been alive at the trial, it cannot be questioned that he could then have testified to his intention. His written declaration of intention is no less admissible than his oral declaration; the question is rather one of weight than of competence. We think the settled rule which is applicable generally is that whenever intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party. Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706; Chichester Chemical Co. v. United States, 60 App.D.C. 134, 136, 49 F. 2d 516; In re Kaufmann's Estate, 281 Pa. 519, 127 A. 133, 138; 22 C.J., § 297, et seq.

Second. We do not think there is merit to the contention that the concluding part of the statement appearing on the notes, suggesting that the trustees (of the asylum) should approve the transaction, affects the question of intent; nor, for that matter, do we think proof of formal ratification essential as the case now stands. The evidence shows, and appellees admit, that Bartlett borrowed the money and that neither he nor anyone for him ever repaid it. It is undisputed that Edmonston did pay it and that his purpose in paying it was to save the asylum from loss. There is no reason to assume, therefore, that the approval of the trustees was not readily forthcoming. But in any event the asylum knew of the sale of the notes by the bank to Edmonston, because Edmonston was treasurer of the asylum and his knowledge was imputable to it. The transaction was not one in which he acted adversely to the asylum's interests. Thus the asylum knew that the bank had undertaken to exceed its authorization and to sell notes which it held only for collection, and not only did the asylum not complain but it received the money and retained it without questioning the validity of the transaction. Under such circumstances we think this phase of the case must be concluded adversely to appellees, and particularly so since the asylum (which was joined as a defendant) still does not complain of the sale. Union Pac. Ry. Co. v. Chicago, etc., Co., 163 U.S. 564, 16 S.Ct. 1173, 41 L.Ed. 265; Pittsburgh Railway Co. v. Keokuk Co., 131 U.S. 371, 9 S.Ct. 770, 33 L.Ed. 157.

Third. Appellee's third and final point is that because the notes were restrictively indorsed the bank had no power or authority to sell them and to sustain this proposition they mainly rely on Kennedy v. Chapin and Werden, Trustees, 67 Md. 454, 10 A.

243. The facts in that case are not unlike those here. There a series of notes was made by one Anna L. Shaw, of Washington, D. C., payable to the order of Thomas Weaver and secured by deed of trust on Maryland property. The trustees were also residents of Washington. Weaver died, and when one of the notes became due his executor placed it in the Central National Bank of Washington for collection. Four months after maturity one Kennedy sent to the bank his check and received the note. The question was whether the payment was made in purchase or in discharge of the note. The court held that the transaction discharged the instrument. In the opinion found in the Maryland Reports the language is:

"The delivery of the check must be considered as a payment of the note, unless the bank intended to sell it, and had power to do so. The executor and the assistant cashier of the bank both testify that the note was placed in the bank for collection and not for sale."

If we were to apply this rule in the District of Columbia, we should have to affirm the decision below. But a situation exists as to that case which impels us to treat it as questionable authority. It is this: We find in the same case, as reported in 10 A. at page 244, immediately following the language we have quoted above, this additional language, not found in the State report:

"And in fact no valid sale of the note could be made without an order of the orphan's court, if the law of Maryland is to decide this question. Code, art. 93, § 274. The deed of trust conveys land in this state, and the note is set up in our courts as a lien on this land. We must necessarily be governed by our own law, in the absence of proof that the law of the District of Columbia is different."

How the difference in reporting the opinion occurred we, of course, are unable to say, but whether we take the opinion as it appears in the Maryland Reports or as it appears in the Atlantic, the applicability of the principle declared loses much of the force it might otherwise have because of the fact that it may have been founded on a statute of Maryland which would have avoided the sale even if it had been made by the executor as owner of the note. By reference to that statute[1] it will be readily seen that in deference to its terms the conclusion reached might have been necessary regardless of the nature of the collecting bank's authority. On this subject see Bank of Kirksville v. Sloop, 198 Mo.App. 225, 200 S.W. 72.

In addition to the doubtful authority of the Maryland decision, there are other cases tending to support appellees' argument on this phase of the case. See, for example, Charnock v. Jones, 22 S.D. 132, 115 N.W. 1072, 16 L.R.A.,N.S., 233. The fact that there is a conflict of authority is well illustrated by Citizens' Trust Co. v. Ward, 195 Mo.App. 223, 190 S.W. 364. Under the facts of this case we prefer to follow those decisions which recognize the right, as purchaser, of a transferee of negotiable paper, even though the immediate transferor is a restrictive indorsee. This holding does not mean that consent of both seller and buyer is not essential to a sale, but it does mean that a court of equity will not permit one person to avoid an admitted debt on the ground that as between two other persons there was a breach of agency. Here as between the asylum and the bank there was an agency relationship, compliance with the strict terms of which the asylum could insist upon; but here also there was a transaction beyond the limits of the agency by which the asylum profited and the appellees were not hurt. To allow appellees now to compel release of the trust deeds on the ground that the bank exceeded its authority in selling the trust notes to Edmonston, would be to allow appellees to take advantage of a breach of agency of which the principal had imputed knowledge, to which the principal presumptively assented, and by which appellees sustained no damage. No such conclusion as that should be reached by a court of equity. We do not have here a case in which the purchase by Edmonston was prejudicial to the asylum's interest in any manner, as by continuing the burden of a part of the debt upon the secured property and thereby lessening the value of the security for the balance of the debt. The entire debt was transferred, and by

[1] Sec. 274, Art. 93, Md.Code 1860:
No executor or administrator shall sell any property of his decedent without an order of the Orphans' Court granting his letters first had and obtained, authorizing such sale, and any sale made without an order of court previously had as aforesaid, shall be void, and no title shall pass thereby to the purchaser.

no possibility could the rights of the asylum be prejudiced. Equally by no possibility could the rights of the maker of the notes, or of appellees as heirs of the mortgaged property, be prejudiced. The recent case of Robinson v. Gentry, Mo.App., 1937, 106 S.W.2d 913, is pertinent at this point. There, as here, a deed of trust creditor, the Mechanics Savings Bank of Moberly, sent a trust note to the Bank of Sturgeon for collection,—and the note there, as here, was so indorsed. The Bank of Sturgeon sold the note to plaintiff for value and duly remitted to its principal. The defendant makers sought to resist foreclosure on the ground that since plaintiff had taken the note from a restrictive indorsee, he got no title and had, by his payment, discharged the debt. The distinguishing feature of that case is that for several years after the transaction in question the defendant makers recognized plaintiff as holder of the note by paying him interest. But the court's discussion of the contention which appellees are here making is worthy of note. The court said (page 917):

"The only party, under all the evidence herein, having any right to complain of the transfer by Spelman [president of the collecting bank] to plaintiff of the note in view of the restrictive indorsement thereon, namely the Mechanics Savings Bank of Moberly, as the payee and original holder of the note, not only did not and does not complain but has come into court and testified on behalf of plaintiff, through its representatives, that the debt to it represented by the note was paid in full by the Bank of Sturgeon through Spelman [its president] and that it was marked off the records of the Mechanics Bank as paid.

"There is no evidence whatsoever to show that any defense, either equitable or at law, available to defendants as makers of the note as against the Mechanics Savings Bank as payee thereof, was in any manner adversely affected·by the transfer of the note by the Bank of Sturgeon through Spelman to plaintiff even though the first-named bank had sent it to the second-named bank for collection only. On the contrary, the evidence conclusively shows that defendants received great and direct benefits as the result of such transfer.

\* \* \* \* \*

"To hold that defendants do not owe plaintiff the amount of the note herein, because of the restrictive indorsement thereon, under the evidence in this record, would be equivalent to holding that defendants do not owe any one the amount thereof. We are of the opinion that the trial court erred in rendering its judgment [to the effect that 'plaintiff is not the owner of the note sued on']."

We prefer to adopt this line of reasoning, and we are, therefore, of opinion that the court below erred in deciding that Edmonston's check in 1925 paid and extinguished the debt. We decline the invitation of amicus curiae to decide what period of limitation would be applicable in a case such as this. We likewise do not pass upon the question of limitation and laches in connection with the right of appellees to maintain a suit to remove a cloud from their title to the property or in any other appropriate action to question, because of laches or limitation, the right of Edmonston's executors to enforce the trust. Edmonston's executors are not parties to this suit, and the question of limitation and laches cannot be injected into the case in its present form.

It follows from what has been said that the decree appealed from should be annulled, appellant restored as trustee, and the bill of complaint dismissed.

Reversed.